

FILED
2018 Feb-06  AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **ERICA MARIE CAGLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE MADISON COUNTY, ALABAMA** | ) |
| **SHERIFF'S OFFICE;** | ) |
| | ) |
| **MADISON COUNTY, ALABAMA;** | ) |
| | ) |
| **THE MADISON COUNTY,** | ) |
| **ALABAMA COMMISSION;** | ) |
| | ) |
| **BLAKE L. DORNING in his Official** | ) **CIVIL ACTION NO.:** |
| **Capacity as Sheriff of Madison County,** | ) _____ |
| **Alabama and in his Individual Capacity;** | )   **(JURY DEMAND)** |
| | ) |
| **DAVID K. JERNIGAN in his Official** | ) |
| **Capacity as Chief Deputy Sheriff of** | ) |
| **Madison County, Alabama and in his** | ) |
| **Individual Capacity;** | ) |
| | ) |
| **KERRY PHILLIPS in his Official** | ) |
| **Capacity as Chief Deputy Sheriff of** | ) |
| **Madison County, Alabama and in his** | ) |
| **Individual Capacity;** | ) |
| | ) |
| **MIKE JONES in his Official Capacity** | ) |
| **as a Deputy Sheriff of Madison County,** | ) |
| **Alabama and in his Individual Capacity;** | ) |
| | ) |
| **BRENT PATTERSON in his Official** | ) |

**Capacity as a Sergeant in the Sheriff's** )
**Office of Madison County, Alabama** )
**and in his Individual Capacity;** )
     )
**STACY RUTHERFORD in his Official** )
**Capacity as a Sergeant in the Sheriff's** )
**Office of Madison County, Alabama** )
**and in his Individual Capacity;** )
     )
**DALE W. STRONG in his Official** )
**Capacity as Chairman of the Madison** )
**County, Alabama Commission and in his** )
**Individual Capacity;** )
     )
**ROGER JONES, Commissioner,** )
**Madison County, Alabama District One,** )
**in his Official Capacity as a** )
**Commissioner of the Madison County,** )
**Alabama Commission and in his** )
**Individual Capacity;** )
     )
**STEVE HARAWAY, Commissioner,** )
**Madison County, Alabama District** )
**Two, in his Official Capacity as a** )
**Commissioner of the Madison County,** )
**Alabama Commission and in his** )
**Individual Capacity;** )
     )
**CRAIG HILL, Commissioner,** )
**Madison County, Alabama District** )
**Three, in his Official Capacity as a** )
**Commissioner of the Madison County,** )
**Alabama Commission and in his** )
**Individual Capacity;** )
     )
**PHIL VANDIVER, Commissioner,** )
**Madison County, Alabama District** )
**Four, in his Official Capacity as a** )

| | |
|---|---|
| **Commissioner of the Madison County,** | ) |
| **Alabama Commission and in his** | ) |
| **Individual Capacity;** | ) |
| | ) |
| **PHIL RIDDICK, Commissioner,** | ) |
| **Madison County, Alabama District Five,** | ) |
| **in his Official Capacity as a** | ) |
| **Commissioner of the Madison County,** | ) |
| **Alabama Commission and in his** | ) |
| **Individual Capacity;** | ) |
| | ) |
| **JERMIE HOWELL in his Official** | ) |
| **Capacity as Director of the Personnel/** | ) |
| **Human Resources Department of** | ) |
| **Madison County, Alabama and in his** | ) |
| **Individual Capacity;** | ) |
| | ) |
| **PAM FLORY in her Official Capacity** | ) |
| **As Deputy Director of the Personnel/** | ) |
| **Human Resources Department of** | ) |
| **Madison County, Alabama and in her** | ) |
| **Individual Capacity;** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

## I.    INTRODUCTION

### FEDERAL CLAIMS

1.      This is an action for legal and equitable relief to redress sexual

harassment, sexual discrimination, a sexually hostile working environment, and

unlawful retaliation against Plaintiff, Erica Marie Cagle ("Cagle"), all of which

were continuing unlawful actions and behavior. The suit is brought to secure the

protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a, 42 U.S.C. §1981(a) (hereinafter "Title VII"); and the Fourteenth Amendment to the Constitution of the United States. Cagle asserts her claims for relief for violations of Title VII and the Fourteenth Amendment through 42 U.S.C. §1983 (hereinafter "§1983").

## STATE LAW CLAIMS

2.     This is also an action for assault and assault and battery/battery against Defendant Mike Jones and Defendant Brent Patterson; and, an action for Wrongful Intrusion Upon Solitude Or Seclusion against Defendant Sgt. Stacy Rutherford.

3.     Cagle's claims arising under the laws of the State of Alabama are properly before this Court based on the doctrine of pendent jurisdiction and the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367.

## JURY DEMAND

4.     Cagle requests a trial by jury of all issues triable by a jury.

## II.     JURISDICTION

## FEDERAL SUBJECT MATTER JURISDICTION EXISTS PURSUANT TO

5.     28 U.S.C. §§ 1331, 1343(a)(3) and (4); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of

1991, 42 U.S.C. §1981a, 42 U.S.C. §1981(a) (hereinafter "Title VII"); and the Fourteenth Amendment to the Constitution of the United States. Cagle asserts her claims for relief for violations of Title VII and the Fourteenth Amendment through 42 U.S.C. §1983 (hereinafter "§1983").

**STATE LAW PENDENT JURISDICTION EXISTS PURSUANT TO**

6.     Cagle's claims arising under the laws of the State of Alabama are properly before this Court based on the doctrine of pendent jurisdiction and the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367.

**III.   VENUE**

7.     The unlawful employment practices challenged in this action occurred in Madison County, Alabama. Venue is proper pursuant to 28 U.S.C. §§1391(b) and 42 U.S.C.  §2000e-5.

**IV.   ADMINISTRATIVE PREREQUISITES**

8.     Cagle has met all administrative conditions precedent for the filing of this case under Title VII. Cagle timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("the EEOC" and/or "EEOC") on August 9, 2017, a copy of which is attached hereto as Exhibit A. On December 14, 2017, a Notice Of Suit Rights was issued by the EEOC regarding Cagle's EEOC Charge Number 420-2017-02695, a copy of which is attached hereto as Exhibits B. Cagle received said Notice Of Suit Rights on December 18,

2017. Cagle is timely filing this suit within ninety (90) days of her receipt of said Notice of Right to Sue.

## V.   **PARTIES**

9.     Plaintiff Erica Marie Cagle ("Cagle") is a female citizen of the United States over the age of nineteen (19) years and is a resident citizen of Madison County, Alabama and the State of Alabama.

10.     Defendant the Madison County, Alabama Sheriff's Office ("the Sheriff's Office") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes.

11.     Defendant Madison County, Alabama ("Madison County") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes.

12.     Defendant the Madison County, Alabama Commission (Commission Chairman Dale W. Strong and Commissioners Roger Jones, Steve Haraway, Craig Hill, Phil Vandiver, and Phil Riddick collectively "the Commission") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes.

13.     Defendant Sheriff Blake L. Dorning ("Sheriff Dorning"), in his official capacity as the Sheriff of Madison County, Alabama, was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an

"employer" for Title VII purposes. Sheriff Dorning is a state actor for purposes of 42 U.S.C. §1983. Sheriff Dorning is sued in his Official Capacity and is sued in his Individual Capacity pursuant to §1983 for violations of Title VII and the Fourteenth Amendment as further set out herein. Sheriff Dorning is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama. Sheriff Dorning is the current Sheriff of Madison County and has served in that position at all times material to this action.

14.    Defendant David K. Jernigan ("Chief Deputy Sheriff Jernigan"), in his official capacity as the Chief Deputy Sheriff of Madison County, Alabama, was Cagle's employer and employed more than fifteen (15) employees, and, therefore, was an "employer" for Title VII purposes. Chief Deputy Sheriff Jernigan is the former Chief Deputy Sheriff of Madison County, Alabama and served in that position at all times material to this action. Chief Deputy Sheriff Jernigan is a state actor for purposes of 42 U.S.C. §1983. Chief Deputy Sheriff Jernigan is sued in his Official Capacity and is sued in his Individual Capacity pursuant to §1983 for violations of Title VII and the Fourteenth Amendment as further set out herein. Chief Deputy Sheriff Jernigan is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama. [1]

---

[1] Although David K. Jernigan is no longer Chief Deputy Sheriff of Madison County, Alabama, Deputy Cagle will refer to Jernigan as "Chief Deputy Sheriff Jernigan" in this his Complaint. Even though Chief Deputy Sheriff Jernigan is no longer employed by the Sheriff's Office, Chief Deputy Sheriff Jernigan continues to involve himself

15.     Defendant Chief Deputy Sheriff Kerry Phillips ("Chief Deputy Sheriff Phillips"), in his official capacity as the Chief Deputy Sheriff of Madison County, Alabama, was Cagle's employer and employed more than fifteen (15) employees, and, therefore, was an "employer" for Title VII purposes. Chief Deputy Sheriff Phillips replaced former Chief Deputy Sheriff Jernigan as Chief Deputy Sheriff of the Madison County, Alabama Sheriff's Office. Chief Deputy Sheriff Phillips is a state actor for purposes of 42 U.S.C. §1983. Chief Deputy Sheriff Phillips is sued in his Official Capacity and is sued in his Individual Capacity pursuant to §1983 for violations of Title VII and the Fourteenth Amendment as further set out herein. Chief Deputy Sheriff Phillips is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

16.     Defendant Deputy Mike Jones ("Deputy Jones") is a state actor for purposes of 42 U.S.C. §1983. Deputy Jones is sued in his Individual Capacity pursuant to §1983 for violations of Title VII and the Fourteenth Amendment as further set out herein. Deputy Jones is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

17.     Defendant Sgt. Brent Patterson ("Sgt. Patterson") is a state actor for purposes of 42 U.S.C. §1983. Sgt. Patterson is sued in his Individual Capacity pursuant to §1983 for violations of Title VII and the Fourteenth Amendment as

in matters having to do with the Sheriff's Office, including, but not limited to, training classes/seminars for employees of the Sheriff's Office.

further set out herein. Sgt. Patterson is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

18.    Defendant Sgt. Stacy Rutherford ("Sgt. Rutherford") is a state actor for purposes of 42 U.S.C. §1983. Sgt. Rutherford is sued in his Individual Capacity pursuant to §1983 for violations of Title VII and the Fourteenth Amendment as further set out herein. Sgt. Rutherford is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

19.    Defendant Dale W. Strong ("Chairman Strong") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes. Chairman Strong is the Chairman of the Madison County, Alabama Commission and served in that position at all times material to this action. Chairman Strong is a state actor for purposes of 42 U.S.C. §1983. Chairman Strong is sued in his Official Capacity as Chairman of the Madison County, Alabama Commission and in his Individual Capacity for violations of Title VII and the Fourteenth Amendment as further set out herein. Chairman Strong is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

20.    Defendant Roger Jones ("Commissioner Jones") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes. Commissioner Jones is the Commissioner for

Madison County, Alabama Commission District One and served in that position at all times material to this action. Commissioner Jones is a state actor for purposes of 42 U.S.C. §1983. Commissioner Jones is sued in his Official Capacity as a Commissioner of the Madison County, Alabama Commission and in his Individual Capacity for violations of Title VII and the Fourteenth Amendment as further set out herein. Commissioner Jones is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

21.     Defendant Steve Haraway ("Commissioner Haraway") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes. Commissioner Haraway is the Commissioner for Madison County, Alabama Commission District Two and served in that position at all times material to this action. Commissioner Haraway is a state actor for purposes of 42 U.S.C. §1983. Commissioner Haraway is sued in his Official Capacity as a Commissioner of the Madison County, Alabama Commission and in his Individual Capacity for violations of Title VII and the Fourteenth Amendment as further set out herein. Commissioner Haraway is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

22.     Defendant Craig Hill ("Commissioner Hill") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer"

for Title VII purposes. Commissioner Hill is the Commissioner for Madison County, Alabama Commission District Three and served in that position at all times material to this action. Commissioner Hill is a state actor for purposes of 42 U.S.C. §1983. Commissioner Hill is sued in his Official Capacity as a Commissioner of the Madison County, Alabama Commission and in his Individual Capacity for violations of Title VII and the Fourteenth Amendment as further set out herein. Commissioner Hill is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

23.    Defendant Phil Vandiver ("Commissioner Vandiver") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes. Commissioner Vandiver is the Commissioner for Madison County, Alabama Commission District Four and served in that position at all times material to this action. Commissioner Vandiver is a state actor for purposes of 42 U.S.C. §1983. Commissioner Vandiver is sued in his Official Capacity as a Commissioner of the Madison County, Alabama Commission and in his Individual Capacity for violations of Title VII and the Fourteenth Amendment as further set out herein. Commissioner Vandiver is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

24.    Defendant Phil Riddick ("Commissioner Riddick") was Cagle's

employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes. Commissioner Riddick is the Commissioner for Madison County, Alabama Commission District Five and served in that position at all times material to this action. Commissioner Riddick is a state actor for purposes of 42 U.S.C. §1983.  Commissioner Riddick is sued in his Official Capacity as a Commissioner of the Madison County, Alabama Commission and in his Individual Capacity for violations of Title VII and the Fourteenth Amendment as further set out herein. Commissioner Riddick is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

25.    Defendant Jermie Howell ("Director Howell") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes. Director Howell is the Director of the Personnel/Human Resources Department of Madison County, Alabama ("the Personnel Dept."; "the Personnel/HR Dept."; "the HR Dept."; and/or, "HR") and served in that position at all times material to this action. Director Howell is a state actor for purposes of 42 U.S.C. §1983. Director Howell is sued in his Official Capacity and in his Individual Capacity pursuant to §1983 for violations of Title VII and the Fourteenth Amendment as further set out herein. Director Howell is a male citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

26.    Defendant Pam Flory ("Deputy Director Flory") was Cagle's employer and employed more than fifteen (15) employees, and, therefore, is an "employer" for Title VII purposes. Deputy Director Flory is the Deputy Director of the HR Dept. and served in that position at all times material to this action. Deputy Director Flory is a state actor for purposes of 42 U.S.C. §1983. Deputy Director Flory is sued in her Official Capacity and in her Individual Capacity pursuant to §1983 for violations of Title VII and the Fourteenth Amendment as further set out herein. Deputy Director Flory is a female citizen of the United States over the age of nineteen (19) years and is a resident citizen of the State of Alabama.

## V.    <u>STATEMENT OF FACTS</u>

27.    The Sheriff's Office's; Madison County's; and, the Commission's policies and procedures for their employees, to which Sheriff Dorning and the Sheriff's Office agreed to be bound by and to follow, to follow regarding complaining about and reporting harassment are, in pertinent part:

A.    Act No. 941 of the  1973 Regular Session of the Alabama Legislature provides, in pertinent part:

1.    "…**Section 1.**    (a) In Madison County, there is hereby created and established a personnel department for the government and control of all employees and appointees holding position in the classified service, as defined in Section 4.
(b) The personnel department shall consist of a personnel board and a personnel director. The personnel board shall consist of three members, one to be appointed as a joint appointee by the Sheriff of the County….

…

**Section 4.**   The provision of this Act shall apply to the following officers and employees in the service of the county:

**…**

(c) All employees of the county sheriff;

…"

B.      The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015, which was also adopted, ratified, confirmed, and followed by the Sheriff's Office as its official policy and custom and which was in effect and applicable at all times material to this case, provided, in pertinent part:

Page 71 Section 4.

"The provisions of this Act shall apply to the following officers and employees in the service of the county:

…

c. All employees of the County Sheriff;"

…

Page 48

"Appendix 2:
HARASSMENT POLICY
**…**

Anyone who believes that he or she is being sexually harassed, or who

is aware of behavior that may violate this policy, should report this to one of the following individuals: Personnel Director, Jermie Howell (256)532-3614, Deputy Personnel Director, Pam Flory (256) 532-3614 or County Administrator, Kevin Jones (256) 532-3492. The offices of Howell, Flory and Jones are located on the 7th floor of the Madison County Courthouse. If for any reason an individual feels that they cannot talk with Howell, Flory or Jones, reports should be made to Madison County Commission Chairman Dale Strong (256) 532-3492…

…"

28.   Cagle was required to sign an **Acknowledgment of Process for Reporting Harassment** which was adopted, ratified, confirmed, and followed by the Sheriff's Office and the Commission as their official policy and custom which states:

"Madison County is committed to providing a work environment that is free from all forms of discrimination and conduct that can be considered harassing, coercive, or disruptive, including sexual harassment. Actions, words, jokes, or comments based on an individual's sex, race, color, national origin, age, religion, disability, or any other legally protected characteristic will not be tolerated.

Anyone who believes that he or she is being sexually harassed, or who is aware of behavior that may violate this policy, should report this to one of the following individuals: Personnel Director, Jermie Howell (256) 532-3614, Deputy Personnel Director, Pam Flory (256) 532-3614 or County Administrator, Kevin Jones (256) 532-3492. The offices of Howell, Flory and Jones are located on the 7th floor of the Madison County Courthouse.

Any supervisor or Department Head who becomes aware of possible sexual or other unlawful harassment ***must immediately*** advise the County Administrator or Personnel Director so it can be investigated in a timely and confidential manner. Any supervisor who fails to make notification when harassment is observed or who is aware of the possibility of harassment and fails to make notification, will be subject to disciplinary action.

Anyone engaging in sexual or other unlawful harassment will be

subject to disciplinary action, up to and including termination of employment.

*__There is no chain of command when it comes to reporting harassment of any kind. Employees are not obligated to notify their direct supervisor before contacting the County Administrator or the Personnel Director to file a claim of harassment.__*"

29.   On or about December 15, 2016, a new Madison County Employee Handbook was adopted, ratified, confirmed, and followed by the Sheriff's Office, Madison County, and the Commission as their official policy and custom which states:

"Madison County is committed to providing a work environment that is free from all forms of discrimination and conduct that can be considered harassing, coercive, or disruptive, including sexual harassment. Actions, words, jokes, or comments based on an individual's sex, race, color, national origin, age, religion, disability, or any other legally protected characteristic will not be tolerated.

Anyone who believes that he or she is being sexually harassed, or who is aware of behavior that may violate this policy, should report this to one of the following individuals: Personnel Director, Jermie Howell (256) 532-3614, Deputy Personnel Director, Pam Flory (256) 532-3614 or County Administrator, Kevin Jones (256) 532-3492. The offices of Howell, Flory and Jones are located on the 7th floor of the Madison County Courthouse.

Any supervisor or Department Head who becomes aware of possible sexual or other unlawful harassment **must immediately** advise the County Administrator or Personnel Director so it can be investigated in a timely and confidential manner. Any supervisor who fails to make notification when harassment is observed or who is aware of the possibility of harassment and fails to make notification, will be subject to disciplinary action.

Anyone engaging in sexual or other unlawful harassment will be subject to disciplinary action, up to and including termination of employment.

*__There is no chain of command when it comes to reporting harassment of any kind. Employees are not obligated to notify their direct supervisor before contacting the County Administrator or the Personnel Director to file a claim of harassment.__*"

30.    The Sheriff's Office, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Madison County, the Commission, Chairman Strong, Director Howell, and Deputy Director Flory stressed to and made it clear to employees of the Sheriff's Office that they were also employees of Madison County and the Commission and that, pursuant to its policy and custom, they were to report their being sexually harassed, or behavior that may have violated the anti-harassment policy of the Sheriff's Office and/or Madison County, and/or the Commission not only to their immediate supervisor and/or the chain of command in the Sheriff's Office but also to Director Howell, Deputy Director Flory, Madison County Administrator Kevin Jones ("Madison County Administrator Jones") and/or Chairman Strong. More specifically, the policy and procedure provided,

> "*...**There is no chain of command when it comes to reporting harassment of any kind. Employees are not obligated to notify their direct supervisor before contacting the County Administrator or the Personnel Director to file a claim of harassment**.*"

31.    The Sheriff's Office, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chairman Strong, Director Howell, and Deputy Director Flory made it clear to employees of the Sheriff's Office:

A.    That the duty and responsibility for investigating, handling, and resolving complaints and reports of sexual harassment, or behavior that may have violated the anti-harassment policies of the Sheriff's Office, Madison County, and/or the Commission had been delegated by the Sheriff's Office, Sheriff

Dorning, and Chief Deputy Sheriff Jernigan to its agents Director Howell, Deputy Director Flory, Madison County Administrator Kevin Jones, and/or Chairman Strong pursuant to the Madison County Employee Handbook and state law, Act No. 941 of the 1973 Regular Session of the Alabama Legislature;

  B. That pursuant to the officially promulgated policy statement, decision, regulation, and custom set forth in the Madison County Employee Handbook and state law which was adopted and ratified by the Sheriff's Office and Sheriff Dorning, the governmental policy, custom, and agency relationship recognized and acknowledged by the Sheriff's Office, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chairman Strong, Director Howell, and Deputy Director Flory was to be that of having Director Howell, Deputy Director Flory, and Chairman Strong be the recipients of complaints and reports of sexual harassment, or behavior that may have violated the anti-harassment policies of the Sheriff's Office, Madison County, and/or the Commission; and,

  C. That pursuant to such governmental policy, custom and agency relationship that Director Howell, Deputy Director Flory, and Chairman Strong investigate those complaints and reports, handle those complaints and reports, and resolve those complaints and reports of sexual harassment, or behavior that may have violated the anti-harassment policies of the Sheriff's Office, Madison County, and/or the Commission. The policy and procedure more specifically provided,

> **"...*There is no chain of command when it comes to reporting harassment of any kind. Employees are not obligated to notify their direct supervisor before contacting the County Administrator or the Personnel Director to file a claim of harassment.*"**

32.     In a press conference, Chairman Strong recently told The Huntsville Times:

> That he sent a two-page letter to Sheriff Dorning, a copy of which he provided to the other six elected Madison County, Alabama Commission Commissioners, in which he told Sheriff Dorning:

>> "...Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up...is baffling to say the least...

>> ...It appears more evident this is a pattern of repeated conduct rather than an honest mistake..."

33.     When interviewed by The Huntsville Times, the late Madison County, Alabama Commissioner Robert C. Harrison agreed with Chairman Strong and said he understood Chairman Strong's frustration.

34.     When interviewed by The Huntsville Times, Commissioner Vandiver agreed with Chairman Strong.

35.     Cagle started working at the Sheriff's Office on or about March 1, 2010 as an Accounting Clerk II. Cagle was promoted to an Accountant II in 2012 and worked in that position until August 2, 2017.

36.     On or about Cagle's first day of work, Sheriff Dorning told Cagle that she was going to be subjected to a male dominant work environment at the Sheriff's Office. Sheriff Dorning essentially told Cagle to be expecting a sexually harassing work environment. Sheriff Dorning warned Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do.

37.     Chief Deputy Sheriff Jernigan made inappropriate sexual comments about female employees of the Sheriff's Office. For example, Chief Deputy Sheriff Jernigan told Cagle that female employee Meghin Dorning's code should be "6969" because she had just come back from her honeymoon.

38.     Chief Deputy Sheriff Jernigan told Lt. Charles Zeissler in regard to Deputy Shelby Holt ("Deputy Holt" or "Holt"), "Man what I would do to that."

39.     Chief Deputy Sheriff Jernigan told Meagan Wimbs that he wished she had not told him that Cagle was changing clothes so he could have walked in on her.

40.     No disciplinary action was taken against Chief Deputy Sheriff Jernigan.

41.     Chief Deputy Sheriff Jernigan was accused of sexual harassment when he worked for the Federal Bureau of Investigation ("the FBI").

42.    In regard to Tim Clark ("Clark"):

A.    Clark worked in the fleet service/maintenance shop of the Sheriff's Office as the Maintenance Manager.

B.    Clark is a friend of Sheriff Dorning's. Clark started a residential subdivision, Jacob's Landing, where Sheriff Dorning and Clark lived as neighbors.

C.    Part of Cagle's job was to go to the fleet service/maintenance shop frequently to get invoices which needed to be paid.

D.    Clark was married.

E.    Clark constantly harassed Cagle trying to get Cagle to go to bars with him, to go to restaurants with him, and to go out with him. Clark even tried to hook Cagle up with his son. Clark drove Cagle crazy. Clark would even come to the office where she worked. Clark sent inappropriate text messages to Cagle.

F.    Clark told an inmate who working in the fleet service/maintenance shop that he (Clark) knew Cagle was fucking the inmate. This was extremely inappropriate and highly offensive to Cagle.

G.    Cagle had a personal cell phone which she personally purchased and for which she personally paid the cell phone service bill.

H.    Sheriff Dorning asked Cagle to, on a part-time basis and after-hours basis, to make arrangements for deputies to perform escort services for

funerals and security services for other events such as religious events. Sheriff Dorning told Cagle the Sheriff's Office would pay the bill for her cell phone service.

      I.      Both Sheriff Dorning and Chief Deputy Sheriff Jernigan would call and/or text Cagle to give her instructions about what part-time escort and security service work needed to be assigned. Both Sheriff Dorning and Chief Deputy Sheriff Jernigan even called and/or texted Cagle regarding such work when Cagle was out of town, on vacation, and out of the country.

      J.      The part-time job assignments involved hours and hours of work for Cagle. Cagle was not paid for the part-time work assignments given to her by both Sheriff Dorning and Chief Deputy Sheriff Jernigan.

      K.      Both Sheriff Dorning and Chief Deputy Sheriff Jernigan knew that Cagle's cell phone was her only means of communications.

      L.      Both Sheriff Dorning and Chief Deputy Sheriff Jernigan knew that Cagle's mother was dying of pancreatic cancer and Cagle's cell phone was Cagle's only means of communication with her mother.

      M.      Cagle consulted with an attorney. Cagle reported and complained to then Cpt. Phillips, now Chief Deputy Sheriff Phillips, Director Howell, and Deputy Director Flory about Clark's sexually harassing her and telling people that she was "fucking" an inmate.

N.     Sheriff Dorning and Chief Deputy Sheriff Jernigan found out that Cagle had consulted with an attorney and were told that Cagle had reported and complained to then Cpt. Phillips, now Chief Deputy Sheriff Phillips, Director Howell, and Deputy Director Flory about Clark's sexually harassing her and telling people that she was "fucking" an inmate.

O.     Sheriff Dorning and Chief Deputy Sheriff Jernigan immediately started retaliating against Cagle for reporting and complaining about Clark's sexually harassing her and saying that she was "fucking" an inmate:

1)  By taking her cell phone away from her knowing that it was her only means of communicating with her mother who was dying and close to death. Cagle was distraught, devastated, crying, and could not sleep.

2)  When they did return Cagle's cell phone to her, they made Cagle start paying the cell phone service bill. This was a substantial hostile financial and workload adverse employment action against Cagle.

3) Even though the cell phone belonged to Cagle and they made Cagle start paying the cell phone service bill, they made Cagle continue doing the unpaid part-time escort and security service work and continued calling her and giving her instructions regarding that unpaid part-time work even when she was out of town, on vacation, and out of the country. This was a substantial financial and workload adverse employment action against Cagle. This financial retaliation

against Cagle was still occurring right up to the time Cagle was no longer employed at the Sheriff's Office, Madison County, and the Madison County Commission.

4) Sheriff Dorning and Chief Deputy Sheriff Jernigan made Cagle's regular job more difficult, if not impossible, to do in that they told Cagle she could no longer go to the fleet service/maintenance shop to get the invoices she needed to get to do her job. Cagle would have to try to get other employees to help her somehow get the invoices. If the invoices were late, Cagle got blamed. This retaliation against Cagle was still occurring right up to the time Cagle was no longer employed at the Sheriff's Office, Madison County, and the Madison County Commission.

5) Each of these hostile retaliatory adverse employment actions Sheriff Dorning and Chief Deputy Sheriff Jernigan took against Cagle violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Cagle of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the

time of the conduct.

        P.      Cagle reported and complained to then Cpt. Phillips, now Chief Deputy Sheriff Phillips, Director Howell, and Deputy Director Flory about how Sheriff Dorning and Chief Deputy Sheriff Jernigan were retaliating against her for reporting and complaining about Clark's sexually harassing her and telling people that she was "fucking" an inmate. Cagle met with Director Howell and Deputy Director Flory two times the same day regarding how Sheriff Dorning and Chief Deputy Sheriff Jernigan were retaliating against her for complaining about and reporting Clark.

        Q.      Nothing was done to stop the substantial hostile financial adverse employment action taken against Cagle and Cagle's regular job being made more difficult, if not impossible, for her to do. Cagle tried to get Chief Deputy Sheriff Phillips to stop the retaliation by having the Sheriff's Office pay the cell phone bill and pay her for the time she spent on the escort service and security service work for the Sheriff's Office. This detrimental financial retaliation against Cagle and her job being made more difficult, if not impossible, for her to do was still occurring after Cpt. Phillips became Chief Deputy Sheriff and right up to the time Cagle was no longer employed at the Sheriff's Office, Madison County, and the Madison County Commission – all of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII

and §1981 through §1983 and which deprived Cagle of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

R.   Chief Deputy Sheriff Jernigan's and Sheriff Dorning's retaliatory hostile adverse employment actions against Cagle had a very chilling effect not only on Cagle, but other Sheriff's Office female employees regarding complaining about and reporting sexual harassment, a sexually hostile working environment, sexual discrimination, and retaliation at the Sheriff's Office. Cagle needed her job. Cagle was afraid to report and complain about her being sexually harassed and discriminated against based on her sex and the sexually hostile working environment at the Sheriff's Office, Madison County, and the Madison County Commission for fear of even more retaliatory adverse employment action being taken against her, up to and including being fired.

S.   Clark was not fired.

T.   Clark was not disciplined.

U.   The actual pattern and practice, the actual policy, and the actual routine in the Sheriff's Office, Madison County, and the Madison County

Commission was what Sheriff Dorning told Cagle it was on or about her first day of work - she was going to be subjected to a male dominated work environment at the Sheriff's Office, Madison County, and the Madison County Commission; she should expect a sexually harassing work environment; and, she would experience. things from the male employees who do what men do.

43.     In regard to Deputy Mike Jones:

A.      Male employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission were in and out of Cagle's office on a daily basis.

B.      Deputy Jones was one of those male employees. Deputy Jones was married.

C.      Deputy Jones frequently, if not almost daily, tried to get Cagle to agree to a time when he could give her a full body massage. Deputy Jones told Cagle he wanted to make sure she was going to be completely naked when he gave her the massages.

D.      Deputy Jones sent text messages to Cagle regarding the messages he wanted to give her.

E.      In one text message, Deputy Jones talked about back rubs and finding "a hiding spot" in the Madison County, Alabama Courthouse in which these back rubs could take place.

F.    In another text message, Deputy Jones told Cagle, "Lol wear nothing but a towel"

G.    Frequently, if not almost daily, Deputy Jones would come to Cagle's desk and massage her shoulders, touch and massage her neck, and touch and massage her head. This was disgusting to Cagle, unwanted by Cagle, unsolicited by Cagle, humiliating to Cagle, and demeaning to Cagle. This unlawful and unwelcomed touching on the part of Deputy Jones continued up to the time Cagle was no longer employed by Sheriff Dorning, the Sheriff's Office, Madison County, and the Commission.

H.    Cagle was afraid of Deputy Jones. Deputy Jones was extremely strong and big and on steroids. Relative to Cagle, Deputy Jones was huge. Deputy Jones was relieved of School Resource Officer duties because the kids were afraid of him.

I.    Cagle was so afraid of Deputy Jones that she asked a co-worker, Julie Rosenberg ("Rosenberg"), to stay with her and not leave her alone when Deputy Jones came into the office. But, Rosenberg could not always be in the office when Deputy Jones was in the office.

J.    Cagle was afraid to complain about and report Deputy Jones' sexually harassing her and assaulting and battering her for several reasons:

1)      Like the Clark situation, Deputy Jones was a friend of Sheriff Dorning. Sheriff Dorning had cooked at Jones' wedding.

2)      Cagle was still suffering from the hostile retaliatory adverse employment actions taken against her when she complained about and reported Clark.

3)      Cagle witnessed the retaliatory adverse employment actions Sheriff Dorning, Chief Deputy Sheriff Jernigan, Madison County, and the Commission took against Investigator Marina Giacomina Garcia ("Investigator Garcia" and/or "Deputy Garcia"), Deputy Holt, and Deputy Greg Gray ("Deputy Gray") when they complained about, reported, and opposed the violations of the law and the policies of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission as set out below. Cagle personally witnessed the devastating effect that Sheriff Dorning's and Chief Deputy Sheriff Jernigan's harsh, demeaning, and degrading retaliatory treatment against those people had on those people.

4)      Cagle witnessed how employees were afraid to report the violations of the law and the violations of the anti-harassment policies of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission for fear of being severely retaliated against.

5)      Cagle complained and reported to Deputy Jones'

supervisor, Sgt. Gary Cross, numerous times that Deputy Jones was constantly trying to get her naked and find a hiding place in the Madison County, Alabama Courthouse where he could give her a massage. Sgt. Cross did nothing to stop Deputy Jones' sexually harassing Cagle.

6)      It would have been futile for Cagle to report and complain about Deputy Jones to Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Madison County, and/or the Commission.

44.    In regard to Sgt. Brent Patterson:

A.      Male employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission were in and out of Cagle's office on a daily basis.

B.      Sgt. Patterson was one of those male employees. Sgt. Patterson's office was right across from Cagle's office. Sgt. Patterson is the uncle of Sheriff Dorning's three children.

C.      Frequently, if not almost daily, Sgt. Patterson would come to Cagle's desk and massage her shoulders, touch and massage her neck, and touch and massage her head. This was disgusting to Cagle, unwanted by Cagle, unsolicited by Cagle, humiliating to Cagle, and demeaning to Cagle. This unlawful and unwelcomed behavior on the part of Sgt. Patterson continued up to the time

Cagle was no longer employed by Sheriff Dorning, the Sheriff's Office, Madison County, and the Commission.

D.     Sgt. Patterson told Cagle that Sheriff Dorning had watched him massaging and touching Cagle's shoulders. Cagle thought it was creepy for Sheriff Dorning to watch Sgt. Patterson massage and touch her shoulders.

E.     Cagle was afraid to complain about and report Sgt. Patterson's sexually harassing her and assaulting and battering her for several reasons:

1)     Cagle was still suffering from the hostile mental and financial retaliatory adverse employment actions taken against her when she complained about and reported Clark.

2)     Cagle witnessed the retaliatory adverse employment actions Sheriff Dorning, Chief Deputy Sheriff Jernigan, Madison County, and the Commission took against Investigator Garcia, Deputy Holt, and Deputy Gray when they complained about, reported, and opposed the violations of the law and the policies of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission as set out below. Cagle personally witnessed the devastating effect that Sheriff Dorning's and Chief Deputy Sheriff Jernigan's harsh, demeaning, and degrading retaliatory treatment against those people had on those people.

3)     Cagle witnessed how employees were afraid to report the violations of the law and the violations of the anti-harassment policies of the

Sheriff's Office, Sheriff Dorning, Madison County, and the Commission for fear of being severely retaliated against.

4)    It would have been futile for Cagle to report and complain about Sgt. Patterson to Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Madison County, and/or the Commission.

5)    On or about August 2, 2017, Cagle called Chief Deputy Sheriff Phillips and reported Sgt. Patterson's sexual involvement with a female administrator at one of the Madison County, Alabama public schools for which Sgt. Patterson was the supervisor of the Special Operations Division which included supervision over School Resource Officers. Sgt. Patterson was responsible for providing a School Resource Officer from the Sheriff's Office. Cagle met with Chief Deputy Sheriff Phillips regarding the Sgt. Patterson matter on the morning of August 2, 2017.

6)    Cagle was emotionally distraught when she met with Chief Deputy Sheriff Phillips because she strongly felt she would be severely retaliated against for complaining about and reporting Sgt. Patterson.

7)    Before leaving work on August 2, 2017 pursuant to Chief Deputy Sheriff Phillips' instructions, Cagle went to Director Howell's and Deputy Director Flory's office, met with them, and reported what was going on with Sgt.

Patterson and the commotion when she met with Chief Deputy Sheriff Phillips that morning, August 2, 2017. Julie Rosenberg accompanied Cagle to Director Howell's and Deputy Director Flory's office

        8)    The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips

communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

45.     Because Cagle worked in the main office, the front office, she personally observed how the actual pattern and practice, the actual policy, and the actual routine described above regarding sexual harassment, sexual discrimination, the sexually hostile working environment, and retaliation for reporting and complaining about violations of the written anti-harassment policies and procedures of the Sheriff's Office, Madison County, and the Madison County Commission, as opposed to the written anti-harassment policies, was invoked against not only female employees but against any male employee who supported female employees and who opposed those female employees being sexually harassed, sexually discriminated against, and having to work in a sexually hostile working environment.

46.     Male employees of the Sheriff's Office, Madison County, the Madison County Commission, with the exception of any male employee, like Deputy Gray, who complained about, reported, and/or opposed sexual discrimination, sexual harassment, and a sexually hostile working environment,

were treated better, more favorably, and differently than was Investigator Garcia, Cagle, and other female employees of the Sheriff's Office, Madison County, and the Commission who worked in the Sheriff's Office:

A.    Sgt. Rutherford dated and made pictures of a female employee of the Sheriff's Office posing on the hood of his patrol car or another patrol car. Sgt. Rutherford was not fired. Upon information and belief, the female employee's husband tried to kill her, but ended-up killing himself. Sgt. Rutherford was not fired.

B.    Sgt. Rutherford sexually harassed a female Sheriff's Office employee who worked with him in the Madison County Jail. Sgt. Rutherford was not fired.

C.    A female employee of the Sheriff's Office had sexual relations with Cpt. Berry in exchange for favors including more favorable personnel evaluations and awards. Cpt. Berry was not fired.

D.    After hacking into Deputy Holt's cell phone and getting very personal nude pictures of Deputy Holt from her cell phone without her permission and knowledge and publishing them to other employees of the Sheriff's Office, employee John Sheldon ("Sheldon") was not fired.

E.    Deputy James King ("Deputy King") was not fired for publishing very personal nude pictures of Deputy Holt to other employees of the

Sheriff's Office.

F.      Deputy King was not fired for sending pictures of his penis to Deputy Holt.

G.      Deputy King told Investigator Garcia that Cpt. Michael A. Salomonsky ("Cpt. Salomonsky") and Lt. Brooks lied about the beating involving Justin Watson. They said no reports had been made when they had actually made reports and signed off on them.

H.      Cpt. Salomonsky told Investigator Garcia that this may be the end of Big Sal.

I.      Sgt. Rutherford was not fired for sending pictures of his penis to Deputy Holt.

J.      A male employee of the Sheriff's Office, Sgt. Gary Cross, sexually assaulted a female employee of the Sheriff's Office, Deputy Sonya Massey. Sgt. Cross was not fired.

K.      Male employees of the Sheriff's Office would not file reports of sexual harassment against females involving non-employees of the Sheriff's Office For example, Sgt. Timothy Whisante ("Sgt. Whisante") would not file a report for a young female who was sexually harassed and sexually touched by her store manager. The girl's mother complained.

L.      Lt. Patton was caught having sex with one of the female

Detention Officers. Lt. Patton was not fired. There is a video recording of this.

M.    Sgt. Brooks had an affair with a Madison County, Alabama Sheriff's Office dispatcher at the 911 Center. Sgt. Brooks became the female employee's supervisor. He was not fired. Sgt. Brooks is now Cpt. Brooks. Cpt. Brooks replaced Cpt. Phillips who is now Chief Deputy Sheriff Phillips.

N.    Sgt. Cross had an affair with a Madison County, Alabama Sheriff's Office dispatcher at the 911 Center. He was not fired.

O.    Chief Deputy Sheriff Jernigan made inappropriate sexual comments about female employees of the Sheriff's Office For example, Chief Deputy Sheriff Jernigan told Cagle that female employee Meghin Dorning's code should be "6969"; Chief Deputy Sheriff Jernigan told others in regard to Deputy Holt, "Man what I would do to that;" Chief Deputy Sheriff Jernigan told Meagan Wimbs that he wished she had not told him that Cagle was changing clothes so he could have walked in on her. No disciplinary action was taken against Chief Deputy Sheriff Jernigan

P.    Chief Deputy Sheriff Jernigan was accused of sexual harassment when he worked for the FBI.

Q.    Cagle reported and complained to Cpt. Phillips, Director Howell, and Deputy Director Flory about Clark's sexually harassing her and telling people that she was "fucking" an inmate. Clark had "hit" on Cagle many times,

constantly asking her to go to bars with him and go to eat with him and sent text messages to her. Clark is a friend of Sheriff Dorning's. Chief Deputy Sheriff Jernigan and Sheriff Dorning retaliated against Cagle by taking her cell phone away from her knowing that it was her only means of communicating with her mother who was dying and close to death. Chief Deputy Sheriff Jernigan's and Sheriff Dorning's actions had a very chilling effect on not only Cagle, but other Sheriff's Dept. female employees regarding complaining about and reporting sexual harassment and a sexually hostile work environment at the Sheriff's Office. Clark was not fired.

R.     Sgt. Patterson had a sexual affair with a local female Madison County, Alabama school official. Sgt. Patterson was in charge of school resource officers provided to the Madison County, Alabama schools by the Sheriff's Dept. Sgt. Patterson was not fired. Sgt. Patterson lied to Cpt. Phillips about what had happened. Deputy Patterson was also guilty of "double dipping". Sgt. Patterson sexually harassed Cagle and sexually assaulted and battered Cagle. Sgt. Patterson was not fired.

S.     Deputy Jerome Heard ("Deputy Heard"), a Madison County school resource officer provided to Meridianville Middle School by the Sheriff's Office was indicted for sex with a minor female at the school. Deputy Heard was previously removed from Buckhorn High School for communicating with a minor

female against instructions.  Deputy Heard was not fired.

T.      Sheriff's Dept. Investigator Roland Campos ("Investigator Campos") was recently arrested and charged with two counts of first-degree sexual abuse involving a juvenile. Investigator Campos was earlier involved in the sexual abuse of his granddaughter. The earlier matter was swept under the rug by the Sheriff's Office. Sheriff's Office Lt. Chaffin has the details regarding these matters.

U.      Deputy Jones sexually harassed and sexually assaulted and battered Cagle. Deputy Jones was not fired.

V.      There are numerous other incidents of male employees of the Sheriff's Office in the course of their exercise of authority over female employees of the Sheriff's Office, Madison County, and the Commission exploiting those female employees, providing job security, providing revised performance evaluations, and taking care of pay mistakes in exchange for sexual favors and attention. None of those male employees of the Sheriff's Office, Madison County, or the Commission have been fired. In fact, several of those male employees have been promoted.

47.     The Sheriff's Office, Sheriff Dorning, Madison County, and the Madison County Commission did not follow their written anti-harassment policies and procedures. The Sheriff's Office's, Sheriff Dorning's, Madison County's, and

the Madison County Commission's written anti-harassment policies and procedures were not worth the paper they were printed on.

48.    Cagle's check stubs state "https://employeeportal. madisoncountyal. gov/ Websites,HR.Employee/ePayroll/Paymentlt".

49.    In regard to Sgt. Stacy Rutherford:

A.    In early 2015, Chief Deputy Sheriff Jernigan circulated the following notice to the Sheriff's Office employees:

> "**Social Media Collateral Duty**
>
> The Madison County Sheriff's Office will be looking to secure an Enforcement Division body to establish a Social Media Strategy to improve Law Enforcement and engage the citizens in our communities.
>
> There is a conference in Phoenix, Arizona scheduled for April 28-30, 2014 *(sic)* that the selected Deputy or Investigator will attend. The conference is named the **'Social Media the Internet and Law Enforcement (SMILE)'**. Additional information can be obtained at www.smileconference.com. The selected person will be someone who is capable of navigating Facebook, Twitter, and to contribute to our new Website that will be operable this month to promote a positive flow of community information for the Sheriff's Office.
>
> Also the selected person will be using Social Media to address crime issues as well as actionable intelligence relative to public safety issues in Madison County. Additional information to pass will be media events, press releases, photos of MCSO employees interacting with the public, wanted persons, lost/found/stolen property, fact checking, alert messaging (i.e., road closures, traffic accidents, etc.). The purpose is to initiate important dialogue with our customers. Look at it as a marketing strategy to inform the public and to expand our

domain to encourage the public's participation in Community Policing. Solving crime is the byproduct of the strategy.

Please canvas your employees to see if you have interest.

Chief

DEADLINE: Close of business 1/15/2015 to Chief's Office. Make appropriate copies for hardcopy dissemination to employees."

B.     Sgt. Rutherford was selected to attend the Social Media the Internet and Law Enforcement "SMILE" training course in Phoenix, Arizona.

C.     In April 2015, Sheriff Dorning, Madison County, and the Commission sent Sgt. Rutherford to Phoenix, Arizona, to attend the SMILE training program. It cost the Sheriff's Office, Madison County, and the Commission hundreds, if not thousands, of dollars to send Sgt. Rutherford to Phoenix, Arizona to attend the SMILE training conference/seminar.

D.     Sgt. Rutherford told numerous Sheriff's Office employees that he used the skills he learned at the SMILE training program to hack into the electronic devices including, but not limited to, cell phones and computers of female employees of the Sheriff's Office.

E.     Three of those female employees were Cagle, Deputy Holt, and Deputy Sydney Wentworth.

F.     Chris Stephens was one of the people who informed Cagle of Sgt. Rutherford's hacking into her electronic devices.

G.     Sydney Wentworth was another person whose being hacked by Sgt. Rutherford was reported to Cagle.

H.     Sgt. Rutherford's behavior was an invasion of Cagle's privacy which Sheriff Dorning and Chief Deputy Sheriff Jernigan concealed and denied that Sgt. Rutherford had been trained to hack into electronic devices. It was also a form of sexual harassment of Cagle as a female employee of Sheriff Dorning, Madison County, and the Commission. Chief Deputy Sheriff Jernigan was very hostile and rude toward Cagle regarding this matter.

50.     In regard to Investigator Garcia:

A.     In November 2014 Investigator Garcia was assigned to the Sex Offender Registration Notification Act ("SORNA") office, a unit of CID.

B.     After she was assigned to the SORNA office, Investigator Garcia complained about and reported the sexual discrimination, sexual harassment, sexually hostile working environment, the racial discrimination, and the racially hostile working environment at the Sheriff's Office several times to her immediate supervisor, Sergeant Greg Free ("Sgt. Free").

C.     No investigation was initiated. Nothing was done to stop or correct the violations of the law and the written policies and procedures of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

D.     By December 2015, the workplace had become so hostile and

unbearable for Investigator Garcia that Investigator Garcia more strongly

complained and reported to Sgt. Free about these matters.

E.    Either the first or second week in December 2015, Investigator

Garcia went to Sgt. Free's office and told him that she had a video recording

device in her SORNA office, which she shared with a female Sheriff's Office

employee, "Anonymous"[2], and was making video recordings in her office:

1)  Investigator Garcia told Sgt. Free that she kept the video

recording device on all the time.

2)  Investigator Garcia asked Sgt. Free for advice and counsel

regarding the video recording device.

3)  A couple of days later, Sgt. Free came to Investigator

Garcia's office and asked her "where is it?" and asked her to show him the video

recording device she was using.

4)  Sgt. Free is on video asking Investigator Garcia, "Where is

it?" and Investigator Garcia's showing him the video recording device.

5)  The video clock device was shown to Sgt. Free, and he and

Investigator Garcia talked about it as Sgt. Free looked at it.

6)  Sgt. Free wanted to make sure the video recording device

was where Investigator Garcia told him it was, wanted to see it with his own eyes,

---

[2] The name and identity of the female employee of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission will be disclosed if and when Investigator Garcia is required to do so by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and/or, order of a Court.

and wanted to make sure the video recording device was working.

7)  Sgt. Free asked Investigator Garcia how she downloaded the video recordings and Investigator Garcia explained to Sgt. Free that the video recordings were on a SD card which she downloaded daily.

8)  Sgt. Free never objected to Investigator Garcia's videotaping what was happening in the office she shared with Anonymous.

9)  Sgt. Free knew that Investigator Garcia was not in her office every minute of the day.

10)   Sgt. Free never told Investigator Garcia to stop video recording Anonymous.

11)   Sgt. Free never told Investigator Garcia to turn the video recording device off when Investigator Garcia was out of her office.

12)   Sgt. Free never told Investigator Garcia to get rid of the video recording device.

13)   Sgt. Free never told Investigator Garcia that making the video recordings was illegal.

F.   By January 2016, Investigator Garcia had worked in SORNA for approximately fourteen (14) months.

G.   On January 6, 2016, Investigator Garcia again met with Sgt. Free complained about, reported, and opposed the sexually hostile working

environment, the sexual discrimination, the sexual harassment, the racial discrimination, the harassment based on race, and the racially hostile working environment in the SORNA office and in the Sheriff's Office:

    1)    Investigator Garcia told Sgt. Free that Anonymous was having sexual relations with male employees of the Sheriff's Office in the SORNA office.

    2)    One of the male employees of the Sheriff's Office with whom Anonymous was having sexual relations was Sheriff Deputy Scott Carle ("Deputy Carle").

    3)    The video recording device recorded Anonymous giving Deputy Carle a "blowjob" in the SORNA office Investigator Garcia shared with Anonymous.

    4)    Captain Charles Berry ("Cpt. Berry" and/or "Charles") was head of the CID division in the Sheriff's Office.

    5)    Cpt. Berry was both Investigator Garcia's and Anonymous' supervisor.

    6)    Cpt. Berry was also having sexual relations with Anonymous.

    7)    Cpt. Berry admitted to inappropriate sexual conduct and having sex with Anonymous.

8)      Deputy Carle admitted to inappropriate sexual conduct with Anonymous.

9)      Investigator Garcia complained and reported that Anonymous' relationship with Cpt. Berry caused her to not be able to do her job.

10)     Investigator Garcia complained and reported that Anonymous told her almost every day, if not daily, that Charles would do whatever she told him to do.

11)     Investigator Garcia complained and reported that Anonymous told her almost every day, if not daily, that she (Anonymous) could do whatever she wanted to do because whatever it was she did or did not do, Charles would take care of her.

12)     Investigator Garcia complained and reported that because of Anonymous' relationship with Cpt. Berry, Anonymous would take over Investigator Garcia's job and tell Investigator Garcia what to do and not to do.

13)     Investigator Garcia reported and complained that Anonymous threatened her if not daily, almost daily and told her if she did not do want she wanted her to do, she would get Charles to make her do what Anonymous wanted Investigator Garcia to do.

14)     Investigator Garcia reported and complained that this situation created a sexually hostile working environment for her, directly affected

and involved her on a daily basis, and thereby interfered with her ability to do her job. Investigator Garcia complained that Cpt. Berry's relationship with Anonymous was based on sexual favoritism.

15)     Investigator Garcia complained and reported that Anonymous did what was expected of her by male supervisors in the Sheriff's Office in order to obtain favorable performance evaluations and power in the Sheriff's Office, to get favorable job assignments, and to further advance herself as far as the male dominated supervisory staff of the Sheriff's Office would allow her to advance.

16)     Investigator Garcia complained about and reported that Anonymous was using Investigator Garcia's desk chair as part of her props for giving "blow jobs" to male employees of the Sheriff's Office and using her desk ruler to measure the size of male co-worker's penises.

17)     Anonymous told Investigator Garcia that Cpt. Berry told her that women have no business in law enforcement.

18)     Investigator Garcia opposed the sexually hostile working environment, the sexual discrimination, the sexual harassment, and the retaliation for reporting and complaining about those violations of policies and procedures and the law.

19)     Cpt. Berry, a male, was not fired.

20)     Anonymous, a female, was fired.

21)     Investigator Garcia complained and reported that Lt. Michael A. Salomonsky ("Lt. Salomonsky") had numerous inappropriate posters on his office wall. One of the posters read "NOTICE SEXUAL HARASSMENT IN THIS AREA WILL NOT BE REPORTED, HOWEVER, IT WILL BE 'GRADED'".

22)     Chief Deputy Sheriff Jernigan had been in Lt. Salomonsky's office many times and had personally observed Lt. Salomonsky's inappropriate posters. But, Chief Deputy Sheriff Jernigan approved of Lt. Salomonsky's inappropriate posters.

23)     Investigator Garcia complained and reported that Lt. Salomonsky's posters and behavior enabled and even encouraged sexual harassment, gender discrimination, racial discrimination, and discrimination based on color and sex and further created a hostile working environment in the Sheriff's Office.

H.     Anonymous met with Chief Deputy Sheriff Jernigan regularly.

I.     Chief Deputy Sheriff Jernigan would call Anonymous and check-in with her regularly.

J.     Anonymous told Investigator Garcia that she and Chief Deputy Sheriff Jernigan e-mailed each other a lot. Chief Deputy Sheriff Jernigan awarded

"Anonymous" with an award that is meant for only certified law enforcement officers which "Anonymous" was not.

    K.    There were and are no females in supervisory positions within the law enforcement side of the Sheriff's Office.

    L.    In January 2016, Investigator Garcia also complained about, reported, and opposed the hostile working environment based on race, the discrimination based on race, the racial harassment, the hostile working environment based on national origin, the discrimination based on national origin, and the harassment based on national origin which went on almost daily, if not daily, in the Sheriff's Office.

    M.    While interviews were being held for investigator positions, Sgt. Brian Chaffin ("Sgt. Chaffin"), now Lt. Chaffin ("Lt. Chaffin"), was on the interview board. Sgt. Chaffin told Investigator Garcia personally that as long as he was in charge neither of the two African-American females, Sharion Howard or Crystal Thornton, would ever be in CID and would never be promoted to investigator. Investigator Garcia was offended at what Lt. Chaffin said. Investigator Garcia told Lt. Chaffin that Deputy Crystal Thornton was a hard worker and that Investigator Garcia was hoping she would be given an investigator's position. But, Sgt. Chaffin insisted that she would never be put in an investigator position.

N.      There is only one African-American captain, Captain Marion Bulluck ("Cpt. Bulluck"), in the Sheriff's Office. Cpt. Berry refused to invite Cpt. Bulluck to the November 2015 office Thanksgiving party. Cpt. Berry said that Cpt. Bulluck was just a "dumb nigger". Investigator Garcia found this to be offensive and that his comments violated the law and the anti-discrimination policies and procedures of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission. Investigator Garcia carried a Thanksgiving dinner plate to Cpt. Bulluck in his office since Cpt. Berry did not want nor did he invite Cpt. Bulluck to attend the office gathering.

O.      Derogatory, demeaning, and discriminatory statements, and "Mexican slurs" about Hispanics/Mexicans are an everyday occurrence in the Sheriff's Office. Most of the time the comments are made in groups of people, and it is hard to tell who exactly said what. Statements, such as Hispanics/Mexicans are taking our jobs and bringing babies that we have to pay for into this country, are made. These statements are directed to Investigator Garcia personally and are very offensive to Investigator Garcia.

P.      Investigator Garcia was told by Lt. Ron Derting ("Lt. Derting") to not help any Hispanics/Mexicans with car tags or anything else in any shape, form, or fashion. Lt. Derting told Investigator Garcia that Hispanics/Mexicans would blow up the Madison County, Alabama Courthouse.

Q.     Sheriff Joe Whisante told Investigator Garcia not to disgrace the Sheriff's Office by marrying a Mexican.

R.     There are constant racist comments made about Hispanics/Mexicans in the Sheriff's Office.

S.     Investigator Garcia's spouse is Hispanic/Mexican. In January 2016, Investigator Garcia complained about and reported:

1)     That she was being harassed because her spouse is Mexican.

2)     That she was deeply hurt, humiliated, and offended when Investigator Jason McMinn ("Investigator McMinn"), an investigator in the CID Crime Scene office, told her in the presence of other people that he bet when she went to see her gynecologist, a bunch of Mexicans come crawling out from between her legs.

3)     That she was deeply hurt, humiliated, and offended when Investigator Steve Finley ("Investigator Finley") asked Investigator Garcia in front of other people whether or not Investigator Garcia needed to be arrested or if Investigator Garcia's husband was legal.

4)     Investigator Garcia reported and complained about, reported, and opposed the frequent derogatory, demeaning, and discriminatory statements made to her about Hispanics/Mexicans and her Hispanic/Mexican

husband.

T.      On January 11, 2016, Investigator Garcia was demoted. Cpt. Berry notified Sgt. Free that Investigator Garcia was being moved out of SORNA and was being assigned as a School Resource Officer ("SRO") – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

U.      On January 11, 2016, Investigator Garcia met with Sgt. Free again and emphatically told him she wanted to continue to work in the SORNA office and that Anonymous is the one who should be reassigned and not her.

V.      Investigator Garcia sought Cagle's assistance. Cagle intervened on behalf of Investigator Cagle. Cagle opposed the retaliation and the adverse employment actions being taken against Investigator Garcia for her reporting and complaining about the violations of the law and of the violations of the anti-harassment and discrimination policies of the Sheriff's Office, Madison County,

and the Madison County Commission. Cagle arranged for Investigator Garcia to meet with her immediate supervisor, then Cpt. Phillips, who is now Chief Deputy Sheriff Phillips.

W.    On January 11, 2016, Investigator Garcia met with then Cpt. Phillips and Cagle. During her meeting with Cpt. Phillips and Cagle:

1)  Investigator Garcia told Cpt. Phillips that she had placed the video recording device in the office she shared with Anonymous.

2)  Cpt. Phillips did not object to her having placed the video recording device in the office she shared with Anonymous, did not tell her that the recording device was illegal, and did not tell her to remove the recording device from the office.

3)  Investigator Garcia reported to Cpt. Phillips that she did not feel she could complain to Cpt. Berry and Lt. Chaffin because of who was involved and because Lt. Chaffin was very close to Cpt. Berry. Investigator Garcia told Cpt. Phillips that she was fearful of retaliation against her by Cpt. Berry, Lt. Chaffin, and Lt. Salomonsky.

4)  Investigator Garcia told Cpt. Phillips that Anonymous told her (Investigator Garcia) that Lt. Salomonsky told her (Anonymous) that Cpt. Berry had told him (Lt. Salomonsky) to tell her (Anonymous) to keep Investigator Garcia "in check". Pursuant to Cpt. Berry's instructions, Lt. Salomonsky had just

revised Anonymous' performance evaluation and had given Anonymous a better performance evaluation than she (Anonymous) was first given.

X.      On January 11, 2016, Cpt. Phillips contacted Chief Deputy Sheriff Jernigan and reported Investigator Garcia's complaints and opposition about the violations of the law and of the anti-harassment policies of the Sheriff's Office, Madison County, and the Madison County Commission going on in the workplace to Chief Deputy Sheriff Jernigan and Sheriff Dorning.

Y.      On January 12, 2016, Chief Deputy Sheriff Jernigan, based on instructions from Sheriff Dorning, announced that Investigator Garcia was being removed from SORNA and being assigned to an SRO job. The new assignment meant a demotion, a loss of prestige, a loss of seniority, and a reduction in pay (approximately $200.00 per month) for Investigator Garcia – each of these hostile retaliatory adverse employment actions taken against Investigator Garcia for her reporting and complaining about the violations of the law and the anti-harassment policies of the Sheriff's Office, Madison County, and the Madison County Commission violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia

and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

Z.    On January 12, 2016, Investigator Garcia met with Chief Deputy Sheriff Jernigan:

1)  Investigator Garcia tried to give Chief Deputy Sheriff Jernigan a copy of one of the videos. Chief Deputy Sheriff Jernigan essentially told Investigator Garcia to get rid of the video recording and told her he did not want to see it  – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

2)    Chief Deputy Sheriff Jernigan brow-beat Investigator Garcia to the point she was crying and extremely distraught – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived

Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

3)      Chief Deputy Sheriff Jernigan threatened Investigator Garcia's job – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

4)      Chief Deputy Sheriff Jernigan threatened Investigator Garcia with criminal prosecution – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional

law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

5)    Chief Deputy Sheriff Jernigan told Investigator Garcia she only had two choices – go on patrol or go to SRO. The two choices meant a demotion for Investigator Garcia, loss of prestige for Investigator Garcia, loss of seniority, and reduction in pay – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known, about given the circumstances and information possessed by the official/person at the time of the conduct.

6)    Investigator Garcia never requested to be transferred out of CID, which includes SORNA. Investigator Garcia would never have voluntarily agreed to this.

7)     Chief Deputy Sheriff Jernigan made it clear to Investigator Garcia that she would have no job with the Madison County, Alabama Sheriff's Office unless she selected one of those two jobs – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

8)     Investigator Garcia had worked at the Sheriff's Office for approximately twenty (20) years. Rather than lose everything she had worked for, Investigator Garcia had no choice but to take one of those two positions. Investigator Garcia told Chief Deputy Sheriff Jernigan that she would take the SRO job if those were her only choices.

9)     Chief Deputy Sheriff Jernigan intimidated and threatened Investigator Garcia so fiercely during her January 12, 2016 meeting with him that the distraught condition she was in was visible. – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and

protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/ person at the time of the conduct. Chief Deputy Sheriff Jernigan told Investigator Garcia that he did not want anybody to see her in that condition and made her leave by the back door of his office. Chief Deputy Sheriff Jernigan told Investigator Garcia to take two (2) days off to try to regain her composure.

10)    Investigator Garcia and Cagle tried to get Chief Deputy Sheriff to allow Cagle to attend Investigator Garcia's January 12, 2016 meeting with Chief Deputy Sheriff Jernigan. Cagle was not allowed to attend the meeting.

11)    Cagle waited for Investigator Garcia to come out of her meeting with Chief Deputy Sheriff Jernigan. Cagle personally observed the mental and emotional condition Investigator Garcia was in when she came out of the meeting with Chief Deputy Sheriff Jernigan. Cagle personally observed that Investigator Garcia was crying and emotionally distraught, devastated. Investigator Garcia's condition was so bad that Cagle even cried.

12)    Investigator Garcia told Cagle that it was so bad in the

meeting with Chief Deputy Sheriff Jernigan that he made her wish she had never complained and reported the things she was reporting.

13)     Investigator Garcia asked Cagle to go to her car and get her sunglasses because she did not want anybody to see her in that condition.

14)     The manner in which Chief Deputy Sheriff Jernigan treated Investigator Garcia on January 12, 2016 and the way he handled her reports, complaints, and opposition to the violations of law and the policies and procedures of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission sent a message to female employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission that if they complain about sexual harassment, sexual discrimination, and a sexually hostile working environment, they would be seriously retaliated against and punished – all of which would violate their Fourteenth Amendment rights and protections and their rights and protections under Title VII and §1981 through §1983 and which would deprive them of those rights and protections. Chief Deputy Sheriff Jernigan knew, or should have known, at the time he threatened, intimidated, and demoted Investigator Garcia that what he was doing was in violation of clearly established constitutional law and her clearly established federally protected statutory rights. A reasonable person/official in Chief Deputy Sheriff Jernigan's position would have known, or should have known, given the circumstances and information possessed

by the official/person at the time of the conduct, that such adverse employment actions were in violation of clearly established constitutional law and clearly established federally protected statutory rights.

a)     Lt. Chaffin who was very close to Cpt. Berry also threatened Investigator Garcia several times and accused her of insubordination and disobedience.

b)     Chief Deputy Sheriff Jernigan, Sheriff Dorning, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission jointly retaliated against Investigator Garcia in blatant violation of the law and the policies and procedures of the Sheriff's Office, Sheriff Dorning, Madison County, and, the Commission, as she feared they would do; moved her out of SORNA; demoted her into a job with less prestige and Two Hundred Dollars ($200.00) less pay per month; and, was threatening to criminally prosecute Investigator Garcia – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment actions were taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the

circumstances and information possessed by the official/person at the time of the conduct. Deputy Garcia turned to the policies and procedures which employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission were to follow in such circumstances.

c)    The Madison County Employee Handbook adopted by the Madison County Personnel Board on June 11, 2015 which was in effect in 2016 is

unequivocally clear:

## Page 71 Section 4.

"The provisions of this Act shall apply to the following officers and employees in
the service of the county:

…

c. All employees of the County Sheriff;

…"

## Page 48

**"Appendix 2:**
**HARASSMENT POLICY**

**…**

Anyone who believes that he or she is being sexually harassed, or who is aware of behavior that may violate this policy, should report this to one of the following individuals: Personnel Director, Jermie Howell (256) 532-3614, Deputy Personnel Director, Pam Flory (256) 532-3614 or County Administrator, Kevin Jones (256) 532-3492. The

offices of Howell, Flory and Jones are located on the 7th floor of the Madison County Courthouse. **If for any reason an individual feels that they cannot talk with Howell, Flory or Jones, reports should be made to Madison County Commission Chairman Dale Strong (256) 532-3492**…

…" *(emphasis added)*

       d)    Cagle was so upset and concerned about how Deputy Garcia was being harassed, discriminated against, and retaliated against that she told Deputy Garcia that since she was more familiar with Deputy Director Flory because of her working in the main office of the Sheriff's Office and working in the same building with Deputy Director Flory that she would go see Deputy Director Flory on her behalf and report, complain about, and oppose how Deputy Garcia was being harassed, discriminated against, and retaliated against. Cagle met with Deputy Director Flory in Deputy Director Flory's office on January 22, 2016. At that time, Cagle opposed how Deputy Garcia was being harassed, discriminated against, and retaliated against for reporting, complaining about, and opposing the sexual harassment in the workplace, the sexual discrimination in the workplace, the sexually hostile working environment, the racial discrimination, the racial harassment, and the racially hostile working environment in the Sheriff's Office, Madison County, and the Commission. Cagle confirmed with Deputy Garcia that she had met with Deputy Director Flory.

e)      Deputy Garcia[3] waited about two (2) weeks after her

January 12, 2016 meeting with Chief Deputy Sheriff Jernigan before going to see

Director Howell and Deputy Director Flory in the Personnel/Human Resources

Office of Madison County, the Sheriff's Office, Sheriff Dorning, and the

Commission. Deputy Garcia met with Director Howell and Deputy Director Flory

on or about February 1, 2016.

f)      Director Howell told Deputy Garcia he had to notify

Chief Deputy Sheriff Jernigan that she was coming to see him.

g)      Director Howell told Deputy Garcia that Chief Deputy

Sheriff Jernigan wanted to know what she wanted, that he thought everything was

over.

h)      Deputy Garcia told Director Howell it was not over, that

she had been retaliated against for reporting and complaining about the sexual

discrimination, gender discrimination, the sexually hostile working environment,

the racial discrimination, and the racially hostile working environment at the

Sheriff's Office, Madison County, and the Commission.

i)      Deputy Garcia told Director Howell that she did not ask

to be transferred out of SORNA and that the transfer was against what she wanted.

Deputy Garcia told Director Howell that she wanted to keep her job in SORNA

---

[3] Investigator Garcia was demoted from Investigator to Deputy on or about January 12, 2016.

and that she wanted to be transferred back into SORNA.

          j)      Deputy Garcia told Director Howell that neither Sheriff Dorning, Chief Deputy Sheriff Jernigan, Lt. Chaffin, Lt. Salomonsky nor anyone else would do anything to stop or correct the violations of the law and the policies and procedures of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

          k)      Deputy Garcia told Director Howell that the workplace had become so hostile and unbearable for her by December 2015 that something had to be done because it was interfering with her ability to do her job.

          l)      Deputy Garcia complained and reported to Director Howell and Deputy Director Flory that what Anonymous was doing was what the male dominated Sheriff's Office expected of and required of female employees in the Sheriff's Office to get good performance evaluations, good job assignments, and promotions.

          m)      Director Howell and Deputy Director Flory took a copy of one of the video recordings and said they would give it to Chief Deputy Sheriff Jernigan.

          n)      Director Howell told Deputy Garcia he would have to give the information she provided to him to Jeff Rich, Madison County's attorney.

          o)      Deputy Garcia did not hear anything else from Director

Howell or Deputy Director Flory.

p)     On March 4, 2016, Deputy Garcia's counsel wrote a letter on behalf of Deputy Garcia to Madison County, Alabama's attorney Rich; Sheriff Dorning; and, Chairman Strong demanding a meeting with Chairman Strong, as provided by the policies and procedures of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission. Deputy Garcia also demanded an independent investigation by the Alabama Bureau of Investigation and the United States Department of Justice. In blatant, egregious, intentional, and willful violation of the policies and procedures of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, Chairman Strong refused to meet with Deputy Garcia and refused to conduct an investigation – all of which violated Deputy Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

q)     In or about March 2016, Lt. Salomonsky was promoted

to the rank of Captain and is now Cpt. Salomonsky. Cpt. Salomonsky replaced Cpt. Berry as head of the CID in the Sheriff's Office.

r)     Deputy Garcia filed her first Charge with the EEOC on March 28, 2016.

s)     On April 5, 2016, Deputy Garcia again met with Chief Deputy Sheriff Jernigan. Chief Deputy Sheriff Jernigan, Sheriff Dorning, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission in a joint decision again retaliated against Deputy Garcia for reporting, complaining about, and opposing the unlawful discrimination in the workplace. Chief Deputy Sheriff Jernigan, Sheriff Dorning, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission in a joint decision gave Deputy Garcia a two (2)-day suspension without pay– all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the

conduct.

t)     On April 5, 2016, Chief Deputy Sheriff Jernigan and Sheriff Dorning offered Deputy Garcia a job in CID. Chief Deputy Sheriff Jernigan and Sheriff Dorning did not offer Deputy Garcia her old job as CID investigator in the SORNA office.

u)     Because Deputy Garcia needed her pay restored to what it was in January 2016 before she was demoted, on April 11, 2016, Deputy Garcia accepted the job in CID as a General Crimes Investigator.

v)     Deputy Garcia filed her second Charge with the EEOC on April 27, 2016.

w)     Investigator Garcia did not start work as a General Crimes Investigator until June 2016.

x)     Investigator Garcia's pay was reduced by $200.00 per month from about January 10, 2016 until about June 25, 2016. Investigator Garcia's full pay was not restored until about June 25, 2016. Sheriff Dorning, Madison County, and the Commission have never paid Investigator Garcia the $200 per month she lost for the months from January 2016 through June 2016

y)     When Deputy Garcia was put back in CID, she was demoted once again. Investigator Garcia went from India 4 to India 14, having no seniority. Before her demotion, Investigator Garcia was India 4, the second highest

investigator in CID. India 14 was the lowest ranking of an investigator in CID. Investigator Garcia was recently lowered to India 15 – now the next to lowest seniority ranking of an investigator in CID. Investigator Garcia lost her seniority which adversely impacted her and her job – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/ person at the time of the conduct.

z)   When Investigator Garcia was put back in CID, Chief Deputy Sheriff Jernigan, Sheriff Dorning, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission in a joint decision assigned Investigator Garcia to a room which only had a desk and folding chair in it. The room was dirty. The room was remotely located away from her co-workers in CID. Investigator Garcia was isolated. The isolation caused Investigator Garcia severe mental and emotional anguish – all of which violated Investigator Garcia's Fourteenth Amendment rights and protections and her rights

and protections under Title VII and §1981 through §1983 and which deprived Investigator Garcia of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Investigator Garcia and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

aa)    It was futile for Investigator Garcia to again meet with Director Howell, Deputy Director Flory, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Lt. Chaffin, Cpt. Salomonsky, or anybody else.

bb)    In the spring of 2017, Investigator Garcia was reassigned to the SORNA office in the CID in the Sheriff's Office as an Investigator.

cc)    During her years as a Deputy and an Investigator, Garcia has received good performance evaluations.

dd)    On April 5, 2016, after Deputy Garcia complained about, reported, and opposed the sexual discrimination, the sexual harassment, the sexually hostile working environment, the racial discrimination, the racial harassment, the racially hostile working environment, the discrimination based on the national origin of my husband, the harassment based on the national origin of my husband, and the hostile working environment based on the national origin of

my husband, Chief Deputy Sheriff Jernigan and Sheriff Dorning gave Deputy Garcia a Warning, accused her of misconduct, insubordination, disobedience, and suspended Deputy Garcia for two days without pay.

      ee)    Up to January 2016, Investigator Garcia had an impeccable record in the Sheriff's Office.

      ff)    The hostile retaliatory adverse employment actions taken against Investigator Garcia as well as the harassment of Investigator Garcia has been severe and frequent.

      gg)    Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission all were jointly and intricately involved in Investigator Garcia's complaints and reports of sexual discrimination, sexual harassment, a sexually hostile working environment and her opposition thereto. Chief Deputy Sheriff Jernigan, Sheriff Dorning, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission all were jointly and intricately involved in Investigator Garcia's complaints and reports of racial discrimination, harassment based on race, and a racially hostile working environment and her opposition thereto. All were jointly and intricately involved in the hostile retaliatory adverse employment actions taken against Garcia.

hh)      The retaliation. discrimination, and adverse employment actions taken against Investigator Garcia has had a chilling effect on employees', including Cagle, of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission who work in the Sheriff's Office and for Sheriff Dorning reporting and complaining about violations of the law and of the anti-discrimination policies and procedures of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission; violations of Title VII protections; violations of §1981; and, violations of the Equal Protection Clause of the U.S. Constitution – the Fourteenth Amendment through §1983. The retaliation, discrimination, and adverse employment actions taken against Investigator Garcia sent a signal to employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission who work in the Sheriff's Office and for Sheriff Dorning that if they complain about, report, and/or oppose racial discrimination, a racially hostile working environment, racial harassment, sexual harassment, discrimination based on sex, etc. they will face punishment and retaliation.

ii)      Deputy Holt talked to Investigator Garcia on or about August 7, 2016 for advice about what she should do regarding how she was being sexually harassed, discriminated based on sex, and working in a sexually hostile working environment.

jj)      Several other female employees in the Sheriff's Office

confided in Investigator Garcia about how they were being sexually harassed, discriminated against based on their sex, and working in a sexually hostile working environment. However, they were afraid of being retaliated against if they complained about, reported, and opposed the sexual harassment they were being subjected to, how they were being discriminated against based on their sex, and their working in a sexually hostile working environment.

kk)   Several female employees in the Sheriff's Office confided in Investigator Garcia about how they were being racially harassed, discriminated against based on their race, and working in a racially hostile working environment. However, they were afraid of being retaliated against if they complained about, reported, and opposed the racial harassment they were being subjected to, how they were being discriminated against based on their race, and their working in a racially hostile working environment.

51.   On September 13, 2016, Cagle provided an under-oath Declaration in support of Investigator Garcia and concerning how Investigator Garcia was retaliated against. In her Declaration, Cagle testified:

> "By the manner in which Chief Deputy David Jernigan has handled the matter with Marina Garcia, Chief Deputy David Jernigan has once again sent a message to female employees of the Madison County, Alabama Sheriff's Office – if you report and complain about sexual harassment, sexual discrimination, and a sexually hostile working environment, you are going to be seriously retaliated against and punished."

52.    Cagle's September 13, 2016 Declaration was submitted to the EEOC in regard to and in support of Garcia's EEOC Charges which were pending with the EEOC.

53.    Male employees of the Sheriff's Office, Madison County, the Madison County Commission, with the exception of any male employee, like Deputy Gray, who complained about, reported, and/or opposed sexual discrimination, sexual harassment, and a sexually hostile working environment, were treated better, more favorably, and differently than was Investigator Garcia, Cagle, and other female employees of the Sheriff's Office, Madison County, and the Commission who worked in the Sheriff's Office:

A.    Sgt. Rutherford dated and made pictures of a female employee of the Sheriff's Office posing on the hood of his patrol car or another patrol car. Sgt. Rutherford was not fired. Upon information and belief, the female employee's husband tried to kill her, but ended-up killing himself. Sgt. Rutherford was not fired.

B.    Sgt. Rutherford sexually harassed a female Sheriff's Office employee who worked with him in the Madison County Jail. Sgt. Rutherford was not fired.

C.    A female employee of the Sheriff's Office had sexual relations with Cpt. Berry in exchange for favors including more favorable personnel

evaluations and awards. Cpt. Berry was not fired.

D.      After getting very personal nude pictures of Deputy Holt from her cell phone without her permission and knowledge and publishing them to other employees of the Sheriff's Office, employee Sheldon was not fired.

E.       Deputy King was not fired for publishing very personal nude pictures of Deputy Holt to other employees of the Sheriff's Office.

F.      Deputy King was not fired for sending pictures of his penis to Deputy Holt.

G.      Deputy King told Investigator Garcia that Cpt. Salomonsky and Lt. Brooks lied about the beating involving Justin Watson. They said no reports had been made when they had actually made reports and signed off on them.

H.      Cpt. Salomonsky told Investigator Garcia that this may be the end of Big Sal.

I.      Sgt. Rutherford was not fired for sending pictures of his penis to Deputy Holt.

J.      A male employee, Sgt. Cross, of the Sheriff's Office sexually assaulted a female employee, Sonya Massey, of the Sheriff's Office. Sgt. Cross was not fired.

K.      Male employees of the Sheriff's Office would not file reports of sexual harassment against females involving non-employees of the Sheriff's Office

For example, Sgt. Whisante would not file a report for a young female who was sexually harassed and sexually touched by her store manager. The girl's mother complained.

L.      Lt. Patton was caught having sex with one of the female Detention Officers. Lt. Patton was not fired. There is a video recording of this.

M.      Sgt. Brooks had an affair with a Madison County, Alabama Sheriff's Office dispatcher. He was not fired.

N.      Sgt. Cross had an affair with a Madison County, Alabama Sheriff's Office dispatcher at the 911 Center. He was not fired.

O.      Chief Deputy Sheriff Jernigan made inappropriate sexual comments about female employees of the Sheriff's Office For example, Chief Deputy Sheriff Jernigan told Cagle that female employee Meghin Dorning's code should be "6969"; Chief Deputy Sheriff Jernigan told others in regard to Deputy Holt, "Man what I would do to that;" Chief Deputy Sheriff Jernigan told Meagan Wimbs that he wished she had not told him that Cagle was changing clothes so he could have walked in on her. No disciplinary action was taken against Chief Deputy Sheriff Jernigan.

P.      Chief Deputy Sheriff Jernigan was accused of sexual harassment when he worked for the FBI.

Q.      Cagle reported and complained to Cpt. Phillips, Director

Howell, and Deputy Director Flory about Clark's sexually harassing her and telling people that she was "fucking" an inmate. Clark had "hit" on Cagle many times, constantly asking her to go to bars with him and go to eat with him and sent text messages to her. Clark is a friend of Sheriff Dorning's. Chief Deputy Sheriff Jernigan and Sheriff Dorning retaliated against Cagle by taking her cell phone away from her knowing that it was her only means of communication with her mother who was dying and close to death. Chief Deputy Sheriff Jernigan's and Sheriff Dorning's actions had a very chilling effect on not only Cagle, but other Sheriff's Dept. female employees regarding complaining about and reporting sexual harassment and a sexually hostile work environment at the Sheriff's Office. Clark was not fired.

R. Sgt. Patterson had a sexual affair with a local female Madison County, Alabama school official. Sgt. Patterson was in charge of school resource officers provided to the Madison County, Alabama schools by the Sheriff's Dept. Sgt. Patterson was not fired. Sgt. Patterson lied to Cpt. Phillips about what had happened. Sgt. Patterson was also guilty of "double dipping". Sgt. Patterson sexually harassed Cagle and sexually assaulted and battered Cagle. Sgt. Patterson was not fired.

S. Deputy Heard, a Madison County school resource officer provided to Meridianville Middle School by the Sheriff's Office was indicted for

sex with a minor female at the school. Deputy Heard had previously been removed from his SRO duties at Buckhorn High School for communication with a minor female against instructions. Deputy Heard was not fired.

T.    Sheriff's Dept. Investigator Campos was recently arrested and charged with two counts of first-degree sexual abuse involving a juvenile. Investigator Campos was earlier involved in the sexual abuse of his granddaughter. The earlier matter was swept under the rug by the Sheriff's Office. Sheriff's Office Lt. Chaffin has the details regarding these matters.

U.    Deputy Jones sexually harassed and sexually assaulted and battered Cagle. Deputy Jones was not fired.

V.    There are numerous other incidents of male employees of the Sheriff's Office in the course of their exercise of authority over female employees of the Sheriff's Office, Madison County, and the Commission exploiting those female employees, providing job security, providing revised performance evaluations, and taking care of pay mistakes in exchange for sexual favors and attention. None of those male employees of the Sheriff's Office, Madison County, or the Commission have been fired. In fact, several of those male employees have been promoted.

54.    In regard to Deputy Holt:

A.    Holt left her personal cell phone in her patrol car. Holt did not

have a password on her cell phone at that time. Anyone could open Holt's cell phone, open whatever she had on it, and upload and/or download whatever she had on it. Holt did have pictures of herself, some of which were nude photographs, on her cell phone.

      B.    At the time Holt left her cell phone in her patrol car, Sheldon, one of the IT employees of the Sheriff's Office, without Holt's permission and/or authorization, got into Holt's cell phone, obtained some or all of the nude photographs, and circulated them around the Sheriff's Office

      C.    Sheldon did this kind of thing with other female employees of the Sheriff's Office including a Sheriff's Office dispatcher.

      D.    Another IT employee of the Sheriff's Office, Hunt, told Holt that Sheldon had gotten nude photographs of her off her cell phone the day she left her cell phone in her patrol car.

      E.    Sheldon was recently arrested in a child pornography sting operation.

      F.    Holt dated Deputy King, another Deputy Sheriff in the Sheriff's Office. Deputy King requested that Holt send nude and partially nude photographs of herself to him on her cell phone during the time they were dating. Holt did what Deputy King asked of her.

      G.    Deputy King sent photographs of his penis to Holt on his cell

phone.

H.     Several people including, but not limited to, Mike Tidwell ("Tidwell") have told Holt that Deputy King sent nude photographs of her to other people. Deputy Gray has told Holt that he was told that Deputy King sent nude photographs of her to other people.

I.     Sgt. Rutherford had "messed around" with another female Sheriff's Office cadet when Holt was a cadet.

J.     Sgt. Rutherford was Holt's direct supervisor for her work as a Sheriff's Office patrol Deputy Sheriff and was her direct supervisor for Holt's part-time work at the shopping mall at Bridge Street.

K.     The Sheriff's Office sent Sgt. Rutherford for training on how to hack into other peoples' digital/electronic devices including laptops, computers, and cell phones. The code name for the "hacking" program is believed to be "Sonar Media".

L.     Sgt. Rutherford told Holt personally that he could hack into people's computers and cell phones and had hacked into people's computers and cell phones when he worked in CID. Sgt. Rutherford made a big deal out of how he could hack into other people's computers and cell phones to Holt. Sgt. Rutherford showed Holt how he could hack into people's computers and cell phones.

M.    Sgt. Rutherford told Holt that he had hacked into her computer because he wanted to see what was going on with her.

N.    Sgt. Rutherford sent a picture of his penis to Holt by means of his cell phone.

O.    Holt never sent a nude photograph, or nude photographs, of herself to Sgt. Rutherford.

P.    Holt never had a sexual relationship of any kind with Sgt. Rutherford and has never done anything sexually with Sgt. Rutherford.

Q.    Sgt. Rutherford constantly sexually harassed Holt and created a sexually hostile working environment for Holt in the following ways:

1)  Sgt. Rutherford would frequently tell Holt that the desk would be perfect for "what I want to do to you".

2)  Then, Sgt. Rutherford would frequently tell Holt that "my tongue is hard and fast and I can get you off with my tongue within thirty seconds or less."  Then Sgt. Rutherford would tell Holt, "If that does not work, then I can put Alka Seltzer on your pussy, but I have to be careful because it can mess a female up."

3)  Sgt. Rutherford would frequently ask Holt to leave Bridge Street early and go to his apartment.  Sgt. Rutherford would frequently tell Holt that since he "is my supervisor"… he could tell her that she could leave early to go

to his apartment.

4) Sgt. Rutherford would frequently tell Holt that she should leave her boyfriend's apartment and come to his apartment because he could show her a better time.

5)     When Holt was in civilian clothes, shorts and a t-shirt, Sgt. Rutherford told Holt that she looked different and constantly talked about her ass looking good.

6)     Sgt. Rutherford told Holt that he knew of places around the county where they could go to f--k. Sgt. Rutherford told Holt they could go behind the church and f--k.

7)     Sgt. Rutherford told Holt many times that he could not help himself from getting a hard on when he was around Holt.

8)     Holt asked Sgt. Rutherford many times to stop sexually harassing her and to stop creating such a sexually hostile working environment for her. Sgt. Rutherford refused and kept right on sexually harassing Holt.

R.     Holt complained about and reported Sgt. Rutherford's sexually harassing her and Sgt. Rutherford's creating a sexually hostile working environment for her to her other direct supervisor:

S.     On July 24, 2016, Holt complained to Deputy Gray about how her supervisor, Sgt. Rutherford, was sexually harassing her and how he was

creating a sexually hostile working environment for her.

      T.    Deputy Gray told Holt that Sgt. Rutherford was her supervisor and it was a violation of the policies and procedures of the Sheriff's Department, Madison County, Alabama, the Commission, and the law for Sgt. Rutherford to be doing to her what he was doing.

      U.    The next day, Deputy Gray called Cody Davis ("Deputy Davis"), a friend and fellow member of the Madison County, Alabama SWAT Team ("SWAT Team"), and Sgt. Matt Cagle ("Sgt. Cagle"), Deputy Gray's immediate supervisor. Deputy Gray reported to Sgt. Cagle what was going on with Sgt. Rutherford, and Holt and asked him what she should do. Deputy Gray told Sgt. Cagle that what Sgt. Rutherford was doing was in violation of the Sheriff's Department policies and procedures, Madison County's policies and procedures, the Commission's policies and procedures, and the law.

      V.    The next Saturday, July 30, 2016, Deputy Gray insisted that Holt talk to Sgt. Cagle. Holt talked to Sgt. Cagle and complained and reported that Sgt. Rutherford was sexually harassing her and how he was creating a sexually hostile working environment.

      W.    On or about Saturday, August 6, 2016, Stan Bice ("Bice"), a Deputy Sheriff who worked with Holt, went to Holt and reported to her that somebody outside the Sheriff's Office had come to him and told him everything

she had told Sgt. Cagle. Bice told Holt she really needed to do something.

      X.    Holt talked to Deputy Garcia in the Sheriff's Department on August 7, 2016.

      Y.    Holt went to her other direct Supervisor, Sgt. Richard Jones ("Sgt. Jones"), on August 7, 2016, and reported Sgt. Rutherford's sexually harassing her and how he was creating a sexually hostile working environment for her. Sgt. Jones told her she really needed to do something - that it was only going to get worse. As was the custom, practice, and policy adopted by, used by, and followed by the Sheriff's Office, Madison County, and the Commission, Sgt. Jones told Holt to go to the Personnel/HR Dept. and report what was going on.

      Z.    Sgt. Jones told Holt he was going to report what she told him to Lt. Brian Hughes ("Lt. Hughes").

      AA.   Holt did as she was instructed and as the policies and procedures of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission required. Holt made a written complaint and report to the Personnel/HR Dept.:

        1)  On August 10, 2016, Holt's hand-written complaint about Sgt. Rutherford's sexually harassing her and how he was creating a sexually hostile working environment for her was hand-delivered to Director Howell, Deputy Director Flory, Sheriff Dorning, Chairman Strong, and Madison County,

Alabama's attorney, Rich.

      2)  On August 10, 2016, Holt also filed her first Charge with the EEOC.

      BB.   On August 11, 2016, Holt met with Director Howell and Chief Deputy Sheriff Jernigan:

      1)  Director Howell and Chief Deputy Sheriff Jernigan met with Holt in Howell's office in the Madison County, Alabama Courthouse on or about August 11, 2016.

      2)  Chief Deputy Sheriff Jernigan made it clear to Holt that he was at the meeting on behalf of Sheriff Dorning, was doing what Sheriff Dorning asked him to do, and was following Sheriff Dorning's instructions.

      CC.   Holt was placed on Administrative Leave:

      1)  Shortly after meeting with Director Howell and Chief Deputy Sheriff Jernigan, Holt was placed on administrative leave.

      2)  On August 15, 2016, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Department; Madison County, and the Commission in a joint decision put Holt on administrative leave based on the official policy and/or custom they had established which violated Holt's Fourteenth Amendment rights and protections and her rights and protections under Title VII and which deprived Holt of those

rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Holt and of which a reasonable person/reasonable official/person would have known, given the circumstances and information possessed by the official/person at the time of the conduct.

DD.   On August 22, 2016, Holt's hand-written August 22, 2016 Supplemental Statement about Sgt. Rutherford's sexually harassing her and how he was creating a sexually hostile working environment for her was hand-delivered to Director Howell, Deputy Director Flory, Sheriff Dorning, Chairman Strong, and Rich. Holt explained that Sgt. Rutherford's behavior interfered with her ability to do her job. Holt stated that Sgt. Rutherford was not joking around as Director Howell and Chief Deputy Sheriff Jernigan inferred Sgt. Rutherford was doing when they met with Holt on August 11, 2016.

EE.   Holt was extremely stressed and was suffering severe mental and emotional anguish as a result of Sgt. Rutherford's sexually harassing her and how he was creating a sexually hostile working environment for her.

FF.   The retaliation against Holt began immediately after she complained and reported how she was being sexually harassed and the sexually hostile working environment in which she was working.

GG.   The retaliation against Holt as well as the harassment of Holt

has been severe.

HH.   Holt was fired:

1)   Sheriff Dorning and Chief Deputy Sheriff Jernigan both were intricately involved with Director Howell and Deputy Director Flory in the investigation of Holt's complaints and reports of sexual harassment and sexually hostile working environment and in their joint decision to fire Holt.

2)   On September 30, 2016, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, the Sheriff's Department; Chairman Strong, Madison County, and the Commission in a joint decision fired Holt based on the official policy and/or custom they had established which violated Holt's Fourteenth Amendment rights and protections and her rights and protections under Title VII and which deprived Holt of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Holt and of which a reasonable official/person would have known, given the circumstances and information possessed by the official/person at the time of the conduct.

II.   Holt filed her second Charge with the EEOC on October 25, 2016.

JJ.   Male employees of the Sheriff's Office were treated better,

more favorably, and differently than was Holt and other female employees of the Sheriff's Office, Madison County, and the Commission who worked in the Sheriff's Office:

        1)     At all times material to Holt's case, there were no females in higher-up supervisory/managerial positions in the Sheriff's Office

        2)     Sgt. Rutherford dated and made pictures of a female employee of the Sheriff's Office posing on the hood of his patrol car or another patrol car. Sgt. Rutherford was not fired. Upon information and belief, the female employee's husband tried to kill her, but ended-up killing himself.

        3)     Sgt. Rutherford sexually harassed a female Sheriff's Office employee who worked with him in the Madison County Jail. Rutherford was not fired.

        4)     A female employee of the Sheriff's Office had sexual relations with Cpt. Berry in exchange for favors including more favorable personnel evaluations and awards. Cpt. Berry was not fired.

        5)     After getting very personal nude pictures of Holt from her cell phone without her permission and knowledge and publishing them to other employees of the Sheriff's Office, Sheldon was not fired.

        6)     Deputy King was not fired for publishing very personal nude pictures of Holt to other employees of the Sheriff's Office

7)    Deputy King was not fired for sending pictures of his penis to Holt.

8)    Sgt. Rutherford was not fired for sending pictures of his penis to Holt.

9)    A male employee of the Sheriff's Office, Sgt. Cross, sexually assaulted a female employee of the Sheriff's Office, Sonya Massey. Sgt. Cross was not fired.

10)   Male employees of the Sheriff's Office would not file reports of sexual harassment against females involving non-employees of the Sheriff's Office For example, Sgt. Whisante would not file a report for a young female who was sexually harassed and sexually touched by her store manager. The girl's mother complained. Cpt. Salomonsky has knowledge of this matter.

11)   Lt. Patton was caught having sex with one of the Detention Officers. He was not fired.

12)   Chief Deputy Sheriff Jernigan made inappropriate sexual comments about female employees of the Sheriff's Office. For example, Chief Deputy Sheriff Jernigan told Cagle that a female employee's, Meghin Dorning, code should be "6969"; Chief Deputy Sheriff Jernigan told others in regard to Holt, "Man what I would do to that."; Chief Deputy Sheriff Jernigan told Meagan Wimbs that he wished she had not told him that Cagle was changing clothes so he

could have walked in on her.

13)     Chief Deputy Sheriff Jernigan was accused of and charged with sexual harassment when he worked for the FBI.

14)     Cagle reported and complained to Cpt. Phillips, Director Howell, and Deputy Director Flory about Clark's sexually harassing her and telling people that she was "fucking" an inmate. Clark had "hit" on Cagle many times constantly asking her to go to bars with him, go to eat with him, sent text messages to her. Clark is a friend of Sheriff Dorning. Chief Deputy Sheriff Jernigan and Sheriff Dorning retaliated against Cagle by taking her cell phone away from her knowing that it was her only means of communication with her mother who was dying and close to death. Chief Deputy Sheriff Jernigan's and Sheriff Dorning's actions had a very chilling effect on not only Cagle's, but other Sheriff's Office female employees complaining about and reporting sexual harassment and a sexually hostile work environment at the Sheriff's Office. Clark was not fired.

15)     Sgt. Patterson had a sexual affair with a local female Madison County, Alabama school official. Sgt. Patterson was in charge of school resource officers provided to the Madison County, Alabama schools by the Sheriff's Office. Sgt. Patterson sexually harassed Cagle and sexually assaulted and battered Cagle. Sgt. Patterson was not fired.

16)     Deputy Heard, a Madison County school resource officer

provided to Meridianville Middle School by the Sheriff's Office was indicted for sex with a minor female at the school. Deputy Heard was not fired.

17)    Sheriff's Office Investigator Campos was recently arrested and charged with two counts of first-degree sexual abuse involving a juvenile. Investigator Campos was earlier involved in the sexual abuse of his granddaughter. The earlier matter was swept under the rug by the Sheriff's Office. Lt. Chaffin has the details regarding these matters.

18) Deputy Jones sexually harassed Cagle and sexually assaulted and battered Cagle. Deputy Jones has not been fired.

KK.   There are numerous other incidents of male employees of the Sheriff's Office in the course of their exercise of authority over female employees of the Sheriff's Office exploiting those female employees, providing job security, providing revised personnel evaluations, and taking care of pay mistakes in exchange for sexual favors and attention. None of those male employees of the Sheriff's Office have been fired. In fact, several of those male employees have been promoted.

55.    In regard to Deputy Gray:

A.    Deputy Gray's check stubs state "https://employeeportal.madisoncountyal.gov/Websites,HR.Employee/ePayroll/Paymentlt".

B.    Deputy Gray has been employed by the Sheriff's Office,

Madison County, and the Commission for over fourteen years.

C.     Deputy Gray was employed on or about June 4, 2003.

D.     Deputy Gray worked in the Madison County, Alabama jail for the first two years of his employment.

E.     On March 21, 2005, Deputy Gray was assigned to patrol duty for about one year.

F.     Deputy Gray was then assigned to the SWAT Team and was a member of the SWAT Team for eleven years.

G.     Deputy Holt, a female, was an employee of the Sheriff's Office, Madison County, and the Madison County Commission. Deputy Holt was assigned to patrol duty.

H.     Deputy Holt left her personal cell phone in her patrol car. Deputy Holt did not have a password on her cell phone at that time. Anyone could open Deputy Holt's cell phone, open whatever she had on it, and upload and/or download whatever she had on it. Deputy Holt did have pictures of herself, some of which were nude photographs, on her cell phone.

I.     At the time Deputy Holt left her cell phone in her patrol car, Sheldon, one of the IT employees of the Sheriff's Office, Madison County, and the Commission, without Deputy Holt's permission and/or authorization, got into Deputy Holt's cell phone, obtained some or all of the nude photographs, and

circulated them around the Sheriff's Office and Madison County.

J.      Sheldon did this kind of thing with other female employees of the Sheriff's Office including a Sheriff's Office dispatcher.

K.      Another IT employee of the Sheriff's Office, Justin Hunt, told Deputy Holt that Sheldon had gotten nude photographs of her off her cell phone the day she left her cell phone in her patrol car.

L.      Sheldon was recently arrested in a child pornography sting operation.

M.      Deputy Holt dated King, another Deputy Sheriff in the Sheriff's Office. Deputy King requested that Deputy Holt send nude and partially nude photographs of herself to him on her cell phone during the time they were dating. Deputy Holt did what Deputy King asked of her.

N.      Deputy King sent photographs of his penis to Deputy Holt on his cell phone.

O.      Several people including, but not limited to, Deputy Tidwell have told Deputy Holt that Deputy King sent nude photographs of her to other people. Deputy Gray has told Deputy Holt that he was told that Deputy King sent nude photographs of her to other people.

P.      Sgt. Rutherford had "messed around" with another female Sheriff's Office cadet when Deputy Holt was a cadet.

Q.      Sgt. Rutherford was Deputy Holt's direct supervisor for her work as a Sheriff's Office patrol Deputy Sheriff and was her direct supervisor for Deputy Holt's part-time work at the shopping mall at Bridge Street.

R.      The Sheriff's Office sent Sgt. Rutherford for training on how to hack into other peoples' digital/electronic devices including laptops, computers, and cell phones. The code name for the "hacking" program is believed to be "Sonar Media".

S.      Sgt. Rutherford told Deputy Holt personally that he could hack into people's computers and cell phones and had hacked into people's computers and cell phones when he worked in CID. Sgt. Rutherford made a big deal out of how he could hack into other people's computers and cell phones to Deputy Holt. Sgt. Rutherford showed Deputy Holt how he could hack into people's computers and cell phones.

T.      Sgt. Rutherford told Deputy Holt that he had hacked into her computer because he wanted to see what was going on with her.

U.      Sgt. Rutherford sent a picture of his penis to Deputy Holt by means of his cell phone.

V.      Deputy Holt never sent a nude photograph, or nude photographs, of herself to Sgt. Rutherford.

W.      Deputy Holt never had a sexual relationship of any kind with

Sgt. Rutherford and has never done anything sexually with Sgt. Rutherford.

X.    Sgt. Rutherford constantly sexually harassed Deputy Holt and created a sexually hostile working environment for Holt in the following ways:

1)    Sgt. Rutherford would frequently tell Deputy Holt that the desk would be perfect for "what I want to do to you".

2)    Then, Sgt. Rutherford would frequently tell Deputy Holt that "my tongue is hard and fast and I can get you off with my tongue within thirty seconds or less."  Then Sgt. Rutherford would tell Deputy Holt, "If that does not work, then I can put Alka Seltzer on your pussy, but I have to be careful because it can mess a female up."

3)    Sgt. Rutherford would frequently ask Deputy Holt to leave Bridge Street early and go to his apartment.  Sgt. Rutherford would frequently tell Deputy Holt that since he "is my supervisor"… he could tell her that she could leave early to go to his apartment.

4)  Sgt. Rutherford would frequently tell Deputy Holt that she should leave her boyfriend's apartment and come to his apartment because he could show her a better time.

5)    When Deputy Holt was in civilian clothes, shorts and a t-shirt, Sgt. Rutherford told Deputy Holt that she looked different and constantly talked about her ass looking good.

6)      Sgt. Rutherford told Deputy Holt that he knew of places around the county where they could go to f--k. Sgt. Rutherford told Holt they could go behind the church and f--k.

7)      Sgt. Rutherford told Deputy Holt many times that he could not help himself from getting a hard on when he was around Deputy Holt.

Y.      Deputy Holt asked Sgt. Rutherford many times to stop sexually harassing her and to stop creating such a sexually hostile working environment for her. Sgt. Rutherford refused and kept right on sexually harassing Deputy Holt.

Z.      Deputy Holt complained about and reported Sgt. Rutherford's sexually harassing her and Sgt. Rutherford's creating a sexually hostile working environment for her to her other direct supervisor:

1)   On July 24, 2016, Deputy Holt complained to Deputy Gray about how her supervisor, Sgt. Rutherford, was sexually harassing her and how he was creating a sexually hostile working environment for her.

2)   Deputy Gray told Deputy Holt that Sgt. Rutherford was her supervisor and it was a violation of the policies and procedures of the Sheriff's Office, Madison County, the Commission, and the law for Sgt. Rutherford to be doing to her what he was doing.

3)      The next day, Deputy Gray called Deputy Davis, a friend and fellow member of the SWAT Team, and Sgt. Cagle, Deputy Gray's immediate

supervisor. Deputy Gray reported to Sgt. Cagle what was going on with Sgt. Rutherford and Deputy Holt and asked him what she should do. Deputy Gray told Sgt. Cagle that what Rutherford was doing was in violation of the Sheriff's Office policies and procedures, Madison County's policies and procedures, the Commission's policies and procedures, and the law.

4)      The next Saturday, July 30, 2016, Deputy Gray insisted that Deputy Holt talk to Sgt. Cagle. Deputy Holt talked to Sgt. Cagle and complained and reported that Sgt. Rutherford was sexually harassing her and how he was creating a sexually hostile working environment.

5)      On or about Saturday, August 6, 2016, Deputy Bice, a Deputy Sheriff who worked with Deputy Holt, went to Deputy Holt and reported to her that somebody outside the Sheriff's Office had come to him and told him everything she had told Sgt. Cagle. Deputy Bice told Deputy Holt she really needed to do something.

6)      Deputy Holt talked to Madison County, Alabama Deputy Garcia on August 7, 2016.

7)      Deputy Holt went to her other direct Supervisor, Sgt. Jones, on August 7, 2016, and reported Sgt. Rutherford's sexually harassing her and how he was creating a sexually hostile working environment for her. Sgt. Jones told her she really needed to do something - that it was only going to get

worse. As was the custom, practice, and policy adopted by, used by, and followed by the Sheriff's Office, Madison County, and the Commission, Sgt. Jones told Holt to go to the HR Office and report what was going on.

        8)    Sgt. Jones told Deputy Holt he was going to report what she told him to Lt. Hughes.

      AA.  Deputy Holt did as she was instructed and as the policies, procedures, and customs of the Sheriff's Office, Madison County, and the Commission required. Deputy Holt made a written complaint and report to the HR Office:

        1)    On August 10, 2016, Deputy Holt's hand-written complaint about Sgt. Rutherford's sexually harassing her and how he was creating a sexually hostile working environment for her was hand-delivered to Director Howell, Deputy Director Pam Flory, Sheriff Dorning, Chairman Strong, and Madison County, Alabama's attorney, Rich.

        2)    On August 10, 2016, Deputy Holt also filed her first Charge with the EEOC.

      BB.  On August 11, 2016, Deputy Holt met with Director Howell and Chief Deputy Sheriff Jernigan:

        1) Director Howell and Chief Deputy Sheriff Jernigan met with Deputy Holt in Howell's office in the Madison County, Alabama Courthouse

on or about August 11, 2016.

       2)  Chief Deputy Sheriff Jernigan made it clear to Deputy Holt that he was at the meeting on behalf of Sheriff Dorning, was doing what Sheriff Dorning asked him to do, and was following Sheriff Dorning's instructions.

      CC.   In violation of the policies and procedures of the Sheriff's Office, Madison County, and the Madison County Commission, Chairman Strong refused to meet with Deputy Holt.

      DD.   Deputy Holt was extremely stressed and was suffering severe mental and emotional anguish as a result of Sgt. Rutherford's sexually harassing her and how he was creating a sexually hostile working environment for her.

      EE.   The retaliation against Deputy Holt began immediately after she complained and reported how she was being sexually harassed and the sexually hostile working environment in which she was working.

      FF.   On August 13, 2016, Deputy Gray told Deputy Holt he was very concerned about her. Deputy Gray called the Sheriff's Office's non-emergency number seeking help for Deputy Holt. Deputy Gray asked to be put through to a supervisor for the purpose of seeking and getting help for Deputy Holt. Deputy Gray was not only retaliated against jointly by Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission for trying to

seek help, but he was also discriminated against jointly by Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission when he tried to seek help for what was happening in the workplace – all of which violated Deputy Gray's Fourteenth Amendment rights and protections and his rights and protections under Title VII and which deprived Deputy Gray of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Deputy Gray and of which a reasonable person/reasonable official would have known or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

GG.   Deputy Gray did not call in a domestic dispute report or complaint on August 13, 2016. Deputy Gray asked to be put through to a supervisor for the purpose of seeking and getting help for Deputy Holt. Deputy Gray was not only retaliated against by for trying to seek help, but was also discriminated against when he tried to seek help for what was happening in the workplace – all of which violated Deputy Gray's Fourteenth Amendment rights and protections and his rights and protections under Title VII and which deprived Deputy Gray of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse

employment action was taken against Deputy Gray and of which a reasonable person/reasonable official would have known or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

HH.   Sgt. Jones, one of Deputy Holt's immediate supervisors, was one of the people who responded to Deputy Gray's August 13, 2016 call to the Sheriff's Office's non-emergency number. Earlier on August 7, 2016, Deputy Holt had reported and complained to Sgt. Jones about Sgt. Rutherford's unlawful harassment and treatment of her.

II.   Sgt. Jones acknowledged to Deputy Gray on August 13, 2016 that Deputy Holt was going through a lot of stuff at work.

JJ.   Cpt. Kerry Phillips ("Chief Deputy Sheriff Phillips") replaced Chief Deputy Sheriff Jernigan as Chief Deputy of the Sheriff's Office when Chief Deputy Sheriff Jernigan was employed by the City of Madison, Alabama as its Chief of Police.  In the presence of Cpt. Salomonsky, Lt. Chaffin, Investigator Ken Williams, and Investigator Garcia, Sgt. Phillip Keel ("Sgt. Keel") called Chief Deputy Phillips "a mother fucker". No disciplinary action was taken against Sgt. Keel.

KK.   Sgt. Patterson lied to Chief Deputy Phillips regarding his sexual involvement with a female assistant principal at a Madison County, Alabama

school. No disciplinary action was taken against Sgt. Patterson.

LL.    A SWAT Team member, Deputy Josh Patterson ("Deputy Patterson") showed up at a third shift squad meeting intoxicated. No disciplinary action was taken against the SWAT Team member.

MM.  Deputy Holt was placed on Administrative Leave:

1)    Shortly after meeting with Director Howell and Chief Deputy Sheriff Jernigan on August 11, 2016, Deputy Holt was placed on administrative leave.

2)    On August 15, 2016, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission in a joint decision put Holt on administrative leave based on the official policy and/or custom they had established which violated Holt's Fourteenth Amendment rights and protections and her rights and protections under Title VII and which deprived Holt of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Holt and of which a reasonable person/reasonable official/person would have known or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

NN.   On August 22, 2016, Deputy Holt's hand-written August 22,

2016 Supplemental Statement about Sgt. Rutherford's sexually harassing her and how he was creating a sexually hostile working environment for her was hand-delivered to Director Howell, Deputy Director Flory, Sheriff Dorning, Chairman Strong, and Rich. Deputy Holt explained that Sgt. Rutherford's behavior interfered with her ability to do her job. Deputy Holt stated that Sgt. Rutherford was not joking around as Director Howell and Chief Deputy Sheriff Jernigan inferred Sgt. Rutherford was doing when they met with Deputy Holt on August 11, 2016.

OO.   On August 22, 2016, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission in a joint decision put Deputy Gray on administrative leave with pay, confiscated his ID, his gun, all of his equipment including his SWAT equipment, and his vehicle without giving him any reason based on the official policy and/or custom they had established which violated Deputy Gray's Fourteenth Amendment rights and protections and his rights and protections under Title VII and which deprived Gray of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Deputy Gray and of which a reasonable person/reasonable official would have known or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

PP.    On August 25, 2016, Deputy Gray wrote a statement in which he stated that the Sheriff's Office, Madison County, and the Commission did not follow their own policies and procedures when it put him on administrative leave.

QQ.   Deputy Gray wrote in his August 25, 2016 statement, "Writer feels that this is a direct retaliation due to Shelby Holts, harassment & claims on Sergeant Rutherford and the Madison County Sheriff's Office."

RR.    On the morning of September 6, 2017, Deputy Gray had a meeting with Sheriff Dorning and Chief Deputy Sheriff Jernigan. Later that day Chief Deputy Sheriff Jernigan met with Deputy Gray again at which time Chief Deputy Sheriff Jernigan informed Deputy Gray of Sheriff Dorning's and his decisions. Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission in a joint decision took the adverse employment actions listed below against Deputy Gray based on the official policy and/or custom they had established which violated Deputy Gray's Fourteenth Amendment rights and protections and his rights and protections under Title VII and which deprived Gray of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment actions were taken against Deputy Gray and of which a reasonable person/reasonable official would have known or should have known about, given

the circumstances and information possessed by the official/person at the time of the conduct.

Deputy Gray was:

1. Suspended for eight days which is two weeks without pay,

2. Taken off the SWAT Team indefinitely, and

3. Ordered to mandatory counseling and had to see a counselor before he could return to work.

SS.   Sheriff Dorning, Chief Deputy Sheriff Jernigan, the Sheriff's Office, Madison County, and the Commission did not follow SWAT Team policies and procedures when Deputy Gray was placed on administrative leave based on the official policy and/or custom they had established which violated Deputy Gray's Fourteenth Amendment rights and protections and his rights and protections under Title VII and which deprived Gray of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment actions were taken against Deputy Gray and of which a reasonable person/reasonable official would have known or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

TT.   Deputy Gray filed his first Charge with the EEOC on September 9, 2016.

UU.   Pursuant to the policies and procedures of the Sheriff's Office, Madison County, and the Madison County Commission, Deputy Gray's September 14, 2016 hand-written complaint and report that he was being retaliated against for opposing, reporting, and complaining about sexual harassment and a sexually hostile working environment in the workplace was hand-delivered to Director Howell, Chairman Strong, and Rich.

VV.   Deputy Holt was fired on September 30, 2016:

1)  Sheriff Dorning and Chief Deputy Sheriff Jernigan both were intricately involved with Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission in the investigation of Deputy Holt's complaints and reports of sexual harassment and sexually hostile working environment and in the joint decision to fire Deputy Holt.

2)  On September 30, 2016, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, Madison County, and the Commission in a joint decision fired Deputy Holt.

WW.  Deputy Gray returned to work on October 5, 2016.

XX.   When Deputy Gray went back to work on October 5, 2016, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission in a joint decision had removed Deputy Gray from the SWAT Team in retaliation for his having

complained about, reported, and opposed sexual discrimination, sexual harassment, and the sexually hostile working environment at the Sheriff's Office, Madison County; and, the Madison County Commission. Sheriff Dorning's, Chief Deputy Sheriff Jernigan's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Madison County's, and the Commission's joint decision to take this adverse employment action against Deputy Gray based on the official policy and/or custom they had established which violated Deputy Gray's Fourteenth Amendment rights and protections and his rights and protections under Title VII and which deprived Gray of those rights and protections – all of which were clearly-established constitutional law and federally protected rights at the time the adverse employment action was taken against Deputy Gray and of which a reasonable person/reasonable official would have known, or should have known, about given the circumstances and information possessed by the official/person at the time of the conduct.

YY.   Deputy Gray was placed on patrol duty and continues to this day to work on patrol duty.

ZZ.   Deputy Holt filed her second Charge with the EEOC on October 25, 2016.

AAA. Deputy Gray filed his second Charge with EEOC on October 25, 2016.

BBB.  The retaliation and discrimination against Deputy Gray has had a chilling effect on employees of the Sheriff's Office reporting and complaining about violations of the policies and procedures of the Sheriff's Office, Madison County, and the Commission; violations of Title VII protections; and, violations of the Equal Protection Clause of the U.S. Constitution – the Fourteenth Amendment.  The retaliation and discrimination against Deputy Gray has sent a signal to everyone else working in the Sheriff's Office that if they complain about and report sexual harassment, discrimination based on sex, etc. that they will face some form of punishment and retaliation.

CCC.  Everyday Deputy Gray goes to work at the Sheriff's Office he does so knowing that Sheriff Dorning's, Madison County's, the Commission's (Commissioners Jones, Haraway, Hill, Vandiver, and Riddick), Director Howell's, Deputy Director Flory's, and Chairman Strong's refusal to put him back on the SWAT Team or allow him back on the SWAT Team is continuing daily harassment by Sheriff Dorning and a threat to further humiliate him.

DDD.  The sexual harassment of Deputy Holt was severe and pervasive.

EEE.  The retaliation against Deputy Holt was severe.

FFF.  Male employees of the Sheriff's Office, Madison County, and the Commission who, unlike Deputy Gray, did not or would not report and

complain about female employees being sexually harassed and/or discriminated against, were treated better, more favorably, and differently than was Deputy Gray.

GGG. Sgt. Rutherford dated and made pictures of a female employee of the Sheriff's Office posing on the hood of his patrol car or another patrol car. Sgt. Rutherford was not fired. Upon information and belief, the female employee's husband tried to kill her, but ended-up killing himself.

HHH. Sgt. Rutherford sexually harassed a female Sheriff's Office employee who worked with him in the Madison County Jail. Sgt. Rutherford was not fired.

III.    A female employee of the Sheriff's Office had sexual relations with Cpt. Berry in exchange for favors including more favorable personnel evaluations and awards. Cpt. Berry was not fired.

JJJ.    After getting very personal nude pictures of Deputy Holt from her cell phone without her permission and knowledge and publishing them to other employees of the Sheriff's Office, Sheldon was not fired.

KKK. Deputy King was not fired for publishing nude pictures of Holt to other employees of the Sheriff's Office

LLL.  Deputy King was not fired for sending pictures of his penis to Holt.

MMM. Sgt. Rutherford was not fired for sending pictures of his penis

to Deputy Holt.

NNN.  A male employee of the Sheriff's Office, Sgt. Cross, sexually assaulted a female employee of the Sheriff's Office, Sonya Massey. Sgt. Cross was not fired.

OOO.  Male employees of the Sheriff's Office would not file reports of sexual harassment against females involving non-employees of the Sheriff's Office For example, Sgt. Whisante would not file a report for a young female who was sexually harassed and sexually touched by her store manager. The girl's mother complained. Cpt. Salomonsky has knowledge of this matter.

PPP.  Lt. Patton was caught having sex with one of the Detention Officers. Lt. Patton was not fired.

QQQ.  Chief Deputy Sheriff Jernigan made inappropriate sexual comments about female employees of the Sheriff's Office For example, Chief Deputy Sheriff Jernigan told Cagle that female employee Meghin Dorning's code should be "6969"; Chief Deputy Sheriff Jernigan told others in regard to Deputy Holt, "Man what I would do to that."; Chief Deputy Sheriff Jernigan told Meagan Wimbs that he wished she had not told him that Cagle was changing clothes so he could have walked in on her.

RRR. Chief Deputy Sheriff Jernigan was accused of and charged with sexual harassment when he worked for the FBI.

SSS. Cagle reported and complained to Cpt. Phillips, Director Howell, and Deputy Director Flory about Clark's sexually harassing her and telling people that she was "fucking" an inmate. Clark had "hit" on Cagle many times, constantly asking her to go to bars with him and go to eat with him and sent text messages to her. Clark is a friend of Sheriff Dorning's. Chief Deputy Sheriff Jernigan and Sheriff Dorning retaliated against Cagle by taking her cell phone away from her knowing that it was her only means of communication with her mother who was dying and close to death. Chief Deputy Sheriff Jernigan's and Sheriff Dorning's actions had a very chilling effect on not only Cagle, but other Sheriff's Office female employees regarding complaining about and reporting sexual harassment and a sexually hostile work environment at the Sheriff's Office. Clark was not fired.

TTT. Sgt. Patterson had a sexual affair with a local female Madison County, Alabama school official. Sgt. Patterson was in charge of school resource officers provided to the Madison County, Alabama schools by the Sheriff's Office. Sgt. Patterson was not fired.

UUU. Deputy Heard, a Madison County school resource officer provided to Meridianville Middle School by the Sheriff's Office was indicted for sex with a minor female at the school. Deputy Heard was not fired.

VVV. Sheriff's Office Investigator Campos was recently arrested and

charged with two counts of first-degree sexual abuse involving a juvenile. Investigator Campos was earlier involved in the sexual abuse of his granddaughter. The earlier matter was swept under the rug by the Sheriff's Office Sheriff's Office Lt. Chaffin has the details regarding these matters.

WWW. There are numerous other incidents of male employees of the Sheriff's Office in the course of their exercise of authority over female employees of the Sheriff's Office, Madison County, and the Commission exploiting those female employees, providing job security, providing revised personnel evaluations, and taking care of pay mistakes in exchange for sexual favors and attention. None of those male employees of the Sheriff's Office, Madison County, or the Commission have been fired. In fact, several of those male employees have been promoted.

XXX.  At all times material to Deputy Holt's case, there were no females in higher-up supervisory/managerial positions in the Sheriff's Office

YYY.  Male employees of the Sheriff's Office, Madison County, and the Madison County Commission, such as Deputy Gray, were retaliated against and discriminated against if they opposed, reported, and/or complained about female employees, such as Deputy Holt, being sexually harassed, discriminated against based on their sex, and having to work in a sexually hostile working environment. Deputy Gray suffered the following adverse employment

actions taken against him:

1)      Deputy Gray lost seniority which seriously adversely affects him, Deputy Gray was number 2 on the SWAT Team seniority list.

2)      Deputy Gray has suffered defamation by being put in a false light. Deputy Gray's reputation has been intentionally, wrongfully, and egregiously damaged. Deputy Gray's professional reputation has been intentionally, wrongfully, and egregiously damaged. Deputy Gray has lost prestige.

3)  Deputy Gray has lost the benefit of eleven years of special SWAT Team training. Lt. Chuck Zeissler ("Lt. Zeissler"), SWAT Commander, told SWAT Team member Investigator Forest Edde ("Investigator Edde"), SWAT Team member Sgt. Davis, and SWAT Team member/Team Leader/Trainer Deputy Sheriff Matt Scratchard ("Deputy Sheriff Scratchard") that Deputy Gray cannot be re-assigned to SWAT because he has a lawsuit pending against the Sheriff's Office

4)      Deputy Gray has lost and continues to lose overtime hours/pay for call-outs, search warrants, and special details which he received as a SWAT Team member.

5)      When Deputy Gray was assigned to patrol duty in September 2016, Deputy Gray had to buy four pairs of black uniform pants. Deputy Gray would have had to buy more parts of patrol uniforms, but he was fortunate in that other deputies gave him gray uniform shirts. However, only two of

the shirts fit. Deputy Gray wears old boots that he had. Deputy Gray is wearing old black under shirts.

6)      Deputy Gray's accrued paid vacation time and accrued paid sick time were taken away from him in retaliation for his having opposed, reported, and/or complained about Deputy Holt's being sexually harassed, discriminated against based on her sex, and having to work in a sexually hostile working environment.

ZZZ.  Deputy Gray suffered and continues to suffer mental and emotional anguish:

AAAA.      Deputy Gray suffered mental and emotional anguish and continues to suffer mental and emotional anguish for being singled out and retaliated against and discriminated against for his trying to follow the law, the policies and procedures of the Sheriff's Office, Madison County, and the Commission – for opposing, complaining about, and reporting sexual harassment, sexual discrimination, and the sexually hostile working environment.

BBBB.      Deputy Gray suffered mental and emotional anguish and continues to suffer mental and emotional anguish for being put in a false light (defamed) for trying to follow the law and the policies and procedures of the Sheriff's Office, Madison County, and the Madison County Commission – for opposing, complaining about, and reporting sexual harassment, sexual

discrimination, and the sexually hostile working environment. Deputy Gray's being put in such a false light had a chilling effect on other male employees coming forward and opposing, reporting, and complaining about how females were being sexually harassed, sexually discriminated against, and the sexually hostile working environment in which they were working.

CCCC.     Deputy Gray had served honorably for eleven years on the SWAT Team before his abrupt removal in September 2016. Deputy Gray's achievements on the SWAT Team had been recognized with commendations and awards and his professionalism had been recognized by awards of Deputy of the Month and other achievement awards. It was mentally and emotionally devastating to Deputy Gray to be removed from the SWAT Team and being singled out and retaliated against for his trying to follow the law and the policies and procedures of the Sheriff's Office, Madison County, and the Madison County Commission – for opposing, complaining about, and reporting sexual harassment, sexual discrimination, and the sexually hostile working environment. Deputy Gray's being removed from the SWAT Team had a chilling effect on other male employees coming forward and opposing, reporting, and complaining about how females were being sexually harassed, sexually discriminated against, and the sexually hostile working environment in which they were working.

DDDD.     Deputy Gray had received performance evaluations

which clearly supported the commendations and awards he received over the years. Deputy Gray had a stellar personnel record until he was intentionally, willfully, and egregiously defamed and put in such a harmful false light by the defendants beginning when opposed, complained about, and reported sexual harassment, sexual discrimination, and the sexually hostile working environment.

EEEE.    Deputy Gray suffered severe mental and emotional anguish and continues to suffer severe mental and emotional anguish for having been put in a false light by being accused of being belligerent, stumbling around drunk, and driving intoxicated on August 13, 2016.

FFFF.    Deputy Gray suffered severe mental and emotional anguish and continues to suffer severe mental and emotional anguish for then Chief Deputy Sheriff Jernigan telling him that the SWAT Team could not count on him or depend on him; that he was disobedient; that he lacked the ability to get along with others; that he did not have good judgment; and, that he was on a self-destructive course.

## FEDERAL LAW CLAIMS

### COUNT I
### CLAIMS OF SEXUAL HARASSMENT, HOSTILE WORKING ENVIRONMENT, DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND TH FOURTEENTH AMENDMENT AGAINST SHERIFF DORNING IN HIS OFFICIAL CAPACITY AS SHERIFF OF MADISON COUNTY, ALABAMA AND IN HIS INDIVIDUAL CAPACITY
### (ASSERTED VIA 42 U.S.C. §1983)

56.    Cagle realleges and incorporates by reference paragraphs 1 through 55 above with the same force and effect as if fully set out in specific detail herein below.

57.    As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

58.    The Sheriff's Office and Sheriff Dorning conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating

and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

59.    The Sheriff's Office, and Sheriff Dorning, enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming Sgt. Rutherford's unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Sheriff Dorning just watched and did nothing to stop Sgt. Patterson's unlawful behavior and behavior which violated his, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

60.     Moreover, in retaliation for her opposition to and complaints of sexual harassment, the Sheriff's Office and Sheriff Dorning conspired together with Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and took Cagle's cell phone  from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

61.     Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

62.     The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the

sexual harassment so rampart, and the retaliatory adverse employment actions against her were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission all of whom ratified,

affirmed, and confirmed each other's behavior and conspired together.

63.     As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the

anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

64.    The Sheriff's Office and Sheriff Dorning conspired together with Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

65.    Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

66.    Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

67.     Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, the Sheriff's Office and Sheriff Dorning conspired together with Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out above. The Sheriff's Office and Sheriff Dorning subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission.

68.     Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office. The Sheriff's Office and Sheriff Dorning conspired together with Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong,

Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission.

69. Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Chief Deputy Sheriff Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. The Sheriff's Office, Sheriff Dorning, Chief Deputy Sheriff Jernigan, and Cpt. Phillips conspired together with Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

70. Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

71. The Sheriff's Office and Sheriff Dorning thus have violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

72.     The Sheriff's Office and Sheriff Dorning failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

73.     The Sheriff's Office and Sheriff Dorning knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Sheriff Dorning about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

74.     It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would

be coming in and out of the office where she worked and that men do what men do. Sheriff Dorning, the Sheriff's office, Director Howell, Deputy Director Flory, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

75.     The unlawful conduct of the Sheriff's Office and Sheriff Dorning, as described above, was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

76.     The Sheriff's Office's and Sheriff Dorning's conduct, as described above, caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

77.     Cagle has been further damaged in that she has lost income, both past

and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

78.     Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

79.     Cagle is suffering and will continue to suffer irreparable injury from the Sheriff's Office's and Sheriff Dorning's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT II
### CLAIMS OF SEXUAL HARASSMENT, HOSTILE WORKING ENVIRONMENT DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENT AGAINST CHIEF DEPUTY SHERIFF JERNIGAN IN HIS OFFICIAL CAPACITY AS CHIEF DEPUTY SHERIFF OF MADISON COUNTY, ALABAMA AND IN HIS INDIVIDUAL CAPACITY
### (ASSERTED VIA 42 U.S.C. §1983)

80.     Cagle realleges and incorporates by reference paragraphs 1 through 79 above with the same force and effect as if fully set out in specific detail herein below.

81.     As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt.

Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

82.   Chief Deputy Sheriff Jernigan conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

83.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in

unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

84.    The Sheriff's Office, and Chief Deputy Sheriff Jernigan, enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Chief Deputy Sheriff Jernigan also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

85.    Moreover, in retaliation for her opposition to and complaints of sexual harassment, Chief Deputy Sheriff Jernigan conspired together with Sheriff Dorning, Cpt Phillips, the Sheriff's Office, Director Howell, Deputy Director

Flory, Chairman Strong, Madison County, and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

86.    Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

87. The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission,

all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

88.     As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Chief

Deputy Sheriff Jernigan, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of

whom ratified, affirmed, and confirmed each other's behavior and conspired together.

89.    Chief Deputy Sheriff Jernigan conspired together with Sheriff Dorning, Cpt. Phillips, the Sheriff's Office, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

90.    Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

91.    Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

92.    Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response

to her opposition of how Garcia was being retaliated against, Chief Deputy Sheriff Jernigan conspired together with Cpt. Phillips, the Sheriff's Office, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out above. Chief Deputy Sheriff Jernigan subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission.

93.    Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office. Chief Deputy Sheriff Jernigan conspired together with Cpt. Phillips, Sheriff Dorning, the Sheriff's Office, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Madison County Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the

Commission.

94. Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

95. Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

96. Chief Deputy Sheriff Jernigan thus violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

97. Chief Deputy Sheriff Jernigan failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in

response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

98.    Chief Deputy Sheriff Jernigan, knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

99.    It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, that females working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom conspired together, including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Chief Deputy Sheriff Jernigan,

Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

100.   The unlawful conduct of the Sheriff's Office, and Chief Deputy Sheriff Jernigan, as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

102.   The Sheriff's Office's, and Chief Deputy Sheriff Jernigan's conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

103.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had

through her employment.

104.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

105.   Cagle is suffering and will continue to suffer irreparable injury from the Sheriff's Office's, and Chief Deputy Sheriff Jernigan's, unlawful conduct as set forth herein unless enjoined by this Court.

**COUNT III**
**CLAIMS OF SEXUAL HARASSMENT, HOSTILE WORKING**
**ENVIRONMENT, DISCRIMINATION, AND RETALIATION IN**
**VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENT**
**AGAINST MADISON COUNTY**
**(ASSERTED VIA 42 U.S.C. §1983)**

106.   Cagle realleges and incorporates by reference paragraphs 1-105 above with the same force and effect as if fully set out in specific detail herein below.

107.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the Madison County Employee Handbook adopted on December 15, 2016, Madison County was and is an employer of Cagle under Title VII's definition of employer. Madison County employs more than fifteen (15) employees. Madison County agreed to be bound by and to follow these policies and procedures and to have the Sheriff's Office and its

employees governed by these policies and procedures.

108.   Madison County knew about and/or should have known about and/or participated in discussions about and/or made decisions about Cagle's reports and claims of sexual harassment, a sexually hostile working environment, discrimination, retaliation, and the retaliatory hostile working environment as they did when Chairman Strong told Sheriff Dorning in a letter published in the Huntsville Times:

> "…Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…
>
> …It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

109.   By virtue of Act No. 941 of the 1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, Madison County was an employer of Cagle under Title VII's definition of employer. Madison County employs more than fifteen (15) employees.

110.   As discussed above, Cagle was willfully and/or maliciously and/or

with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

111.   Madison County conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, and the Commission by ratifying, confirming, and affirming Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching

Cagle's head was frequent, if not daily.

112.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

113.   Madison County enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Madison County also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

114.   Moreover, in retaliation for her opposition to and complaints of sexual

harassment, Madison County conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

115.   The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once

again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

116.    As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, and Sheriff Dorning's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of

resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

117. Madison County conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, and the Madison County Commission and subjected Cagle to disparate treatment due to her sex.

118.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

119. Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

120.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

121.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Madison County conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief

Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, and the Madison Commission and subjected Cagle to ongoing acts of retaliation, as set out above. Madison County subjected Cagle to an unlawful retaliatory hostile environment.

122.  Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

123.  Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

124.  Madison County thus has violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

125.  Madison County failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment

continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

126.   Madison County knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

127.   It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Madison County, Sheriff Dorning, the Sheriff's Office, Director Howell,

Deputy Director Flory, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

128.   The unlawful conduct of Madison County, as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

129.   Madison County's conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

130.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

131.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

132.   Cagle is suffering and will continue to suffer irreparable injury from Madison County's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT IV
## CLAIMS OF SEXUAL HARASSMENT, HOSTILE WORKING ENVIRONMENT, DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, AND RETALIATION IN VIOLATION OF TITLE VII THE FOURTEENTH AMENDMENTAGAINST THE COMMISSION
### (ASSERTED VIA 42 U.S.C. §1983)

133.   Cagle realleges and incorporates by reference paragraphs 1-132 above with the same force and effect as if fully set out in specific detail herein below.

134.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the Madison County Employee Handbook adopted on December 15, 2016, the Commission was and is an employer of Cagle under Title VII's definition of employer. The Commission employs more than fifteen (15) employees. the Commission agreed to be bound by and to follow these policies and procedures and to have the Sheriff's Office and its

employees governed by these policies and procedures.

135.   The Commission knew about and/or should have known about and/or participated in discussions about and/or made decisions about Cagle's reports and claims of sexual harassment, a sexually hostile working environment, discrimination, retaliation, and the retaliatory hostile working environment as they did when Chairman Strong told Sheriff Dorning in a letter published in the Huntsville Times:

> "…Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…
>
> …It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

136.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, the Commission was an employer of Cagle under Title VII's definition of employer. The Commission employs more than fifteen (15) employees.

137.   As discussed above, Cagle was willfully and/or maliciously and/or

with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

138.   The Commission conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, and Madison County by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching

Cagle's neck, and touching Cagle's head was frequent, if not daily.

139.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

140.   The Commission enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. The Commission also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

141.   Moreover, in retaliation for her opposition to and complaints of sexual

harassment, the Commission conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, and Madison County and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

142. The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than

present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

143.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, and Sheriff Dorning's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's

behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

144.   The Commission conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, and Madison County and subjected Cagle to disparate treatment

due to her sex.

145.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

146.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

147.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

148.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, the Commission

subjected Cagle to ongoing acts of retaliation, as set out above. The Commission conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, and Madison County and subjected Cagle to an unlawful retaliatory hostile environment.

149.   Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

150.   Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

151.   The Commission thus has violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

152.   The Commission failed to take effective remedial action to end the

retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

153.   The Commission knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

154.   It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, that females working for Sheriff Dorning, Madison County, and the Commission including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would

be coming in and out of the office where she worked and that men do what men do. The Commission, Sheriff Dorning, the Sheriff's Office, Director Howell, Deputy Director Flory, and Madison County stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

155.   The unlawful conduct of the Commission, as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

156.   The Commission's conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

157.   Cagle has been further damaged in that she has lost income, both past

and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

158. Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

159. Cagle is suffering and will continue to suffer irreparable injury from the Commission's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT V
### CLAIMS OF SEXUAL HARASSMENT, HOSTILE WORKING ENVIRONMENT, DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENT AGAINST DIRECTOR HOWELL IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE PERSONNEL DEPARTMENT OF MADISON COUNTY AND IN HIS INDIVIDUAL CAPACITY
### (ASSERTED VIA 42 U.S.C. §1983)

160. Cagle realleges and incorporates by reference paragraphs 1-159 above with the same force and effect as if fully set out in specific detail herein below.

161. By virtue of Act No. 941 of the 1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the Madison County Employee Handbook adopted on December 15, 2016, Director Howell was and is

an employer of Cagle under Title VII's definition of employer. Director Howell employs more than fifteen (15) employees. Director Howell agreed to be bound by and to follow these policies and procedures and to have the Sheriff's Office and its employees governed by these policies and procedures.

162.   Director Howell knew about and/or should have known about and/or participated in discussions about and/or made decisions about Cagle's reports and claims of sexual harassment, a sexually hostile working environment, discrimination, retaliation, and the retaliatory hostile working environment as they did when Chairman Strong told Sheriff Dorning in a letter:

> "…Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…
>
> …It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

163.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, Director Howell was an employer of Cagle under Title VII's definition of employer. Director Howell employs more than fifteen (15)

employees.

164.   As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

165.   Director Howell conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging

Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

166.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

167.   Director Howell enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Director Howell also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the

time of the conduct.

168.    Moreover, in retaliation for her opposition to and complaints of sexual harassment, Director Howell conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission and Cagle's cell phone from her when her mother was dying; started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation; made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation; and, took other adverse employment actions against her.

169.    Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

170.    Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

171.    The commotion from Cagle's reporting Sgt. Patterson resulted in

Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle

even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

172.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working

environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together..

173.   Director Howell conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

174.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

175.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these

violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

176.    Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Director Howell conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out above. Director Howell subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

177.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office.  Director Howell conspired together with Cpt./Chief Deputy Sheriff Phillips, Sheriff Dorning, the Sheriff's Office, Chief Deputy Sheriff Jernigan, Deputy Director Flory, Chairman Strong, Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission.

178.   Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

179.   Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

180.   Director Howell thus has violated the proscriptions against

retaliation, sexual harassment, and discrimination found in Title VII and the equal

protection of the laws, the Fourteenth Amendment, through the vehicle of 42

U.S.C. §1983.

181.   Director Howell failed to take effective remedial action to end the

retaliatory hostile environment, and instead the retaliatory hostile environment

continued and escalated with Cagle's being retaliated against in response to her

complaints of retaliation. These ongoing acts of retaliation which caused Cagle

economic damages are set forth above.

182.   Director Howell knew of Cagle's reports, complaints, and opposition

because Director Howell and Deputy Director Flory told Cagle they would have to

tell Chief Deputy Sheriff Jernigan about her coming to them and her reports,

complaints, and opposition to the violations of the law and of the anti-harassment

policies of Sheriff Dorning, Madison County, and the Commission.

183.   It was the custom, policy, and practice of the Sheriff's Office and

Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning,

Director Howell, Deputy Director Flory, Madison County, and the Commission, all

of whom ratified, affirmed, and confirmed each other's policies, practices, and

behavior and conspired together, including, but not limited to Cagle, were

subjected to a male dominant work environment at the Sheriff's Office and the

accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Director Howell, Sheriff Dorning, the Sheriff's Office, Deputy Director Flory, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

184.   The unlawful conduct of Director Howell, as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

185.   Director Howell's conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

186.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

187.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

188.   Cagle is suffering and will continue to suffer irreparable injury from Director Howell's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT VI
### CLAIMS OF SEXUAL HARASSMENT, HOSTILE WORKING ENVIRONMENT, DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENT AGAINST DEPUTY DIRECTOR FLORY IN HER OFFICIAL CAPACITY AS DEPUTY DIRECTOR OF THE PERSONNEL DEPARTMENT OF MADISON COUNTY AND IN HER INDIVIDUAL CAPACITY
**(ASSERTED VIA 42 U.S.C. §1983)**

189.   Cagle realleges and incorporates by reference paragraphs 1-188 above with the same force and effect as if fully set out in specific detail herein below.

190.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the Madison County Employee Handbook adopted on December 15, 2016, Deputy Director Flory was and is an employer of Cagle under Title VII's definition of employer. Deputy Director Flory employs more than fifteen (15) employees. Deputy Director Flory agreed to be bound by and to follow these policies and procedures and to have the Sheriff's Office and its employees governed by these policies and procedures.

191.   Deputy Director Flory knew about and/or should have known about and/or participated in discussions about and/or made decisions about Cagle's reports and claims of sexual harassment, a sexually hostile working environment, discrimination, retaliation, and the retaliatory hostile working environment as they did when Chairman Strong told Sheriff Dorning in a letter published in the Huntsville Times:

> "…Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…
>
> …It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

192.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama

Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, Deputy Director Flory was an employer of Cagle under Title VII's definition of employer. Deputy Director Flory employs more than fifteen (15) employees.

193.   As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

194.   Deputy Director Flory conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Chairman Strong, the

Sheriff's Office, Madison County, and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

195.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

196.   Deputy Director Flory enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Deputy Director Flory also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those

rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

197.   Moreover, in retaliation for her opposition to and complaints of sexual harassment, Deputy Director Flory conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Chairman Strong, the Sheriff's Office, Madison County and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

198.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

199.   The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan

left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

200.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was

losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

201.   Deputy Director Flory conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Chairman Strong, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

202.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

203.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile

working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

204.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Deputy Director Flory conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Chairman Strong, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out above. Deputy Director Flory subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission, all

of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

205.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office.  Deputy Director Flory conspired together with Cpt./Chief Deputy Sheriff Phillips, Sheriff Dorning, the Sheriff's Office, Chief Deputy Sheriff Jernigan, Director Howell, Chairman Strong, Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission.

206.   Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

207.   Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring

opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

208.   Deputy Director Flory thus has violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

209.   Deputy Director Flory failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

210.   Deputy Director Flory knew of Cagle's reports, complaints, and opposition because Deputy Director Flory and Director Howell told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

211.   It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and

behavior and conspired together, that females working for Sheriff Dorning, Madison County, and the Commission including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Deputy Director Flory, Sheriff Dorning, the Sheriff's Office, Director Howell, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

212.   The unlawful conduct of Deputy Director Flory as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

213.   Deputy Director Flory's conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

214.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

215.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

216.   Cagle is suffering and will continue to suffer irreparable injury from Deputy Director Flory's unlawful conduct as set forth herein unless enjoined by this Court.

**COUNT VII**
**CLAIMS OF DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, HOSTILE WORKING ENVIRONMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENT AGAINST CHAIRMAN STRONG IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE COMMISSION AND IN HIS INDIVIDUAL CAPACITY**
**(ASSERTED VIA 42 U.S.C. §1983)**

217.   Cagle realleges and incorporates by reference paragraphs 1-216 above with the same force and effect as if fully set out in specific detail herein below.

218.   By virtue of Act No. 941 of the 1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the Madison County Employee Handbook adopted on December 15, 2016, Chairman Strong was and is an employer of Cagle under Title VII's definition of employer. Chairman Strong employs more than fifteen (15) employees. Chairman Strong agreed to be bound by and to follow these policies and procedures and to have the Sheriff's Office and its employees governed by these policies and procedures.

219.   Chairman Strong knew about and/or should have known about and/or participated in discussions about and/or made decisions about Cagle's reports and claims of sexual harassment, a sexually hostile working environment, discrimination, retaliation, and the retaliatory hostile working environment as they did when Chairman Strong told Sheriff Dorning in a letter published in the Huntsville Times:

> "…Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…

…It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

220.  By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, Chairman Strong was an employer of Cagle under Title VII's definition of employer. Chairman Strong employs more than fifteen (15) employees.

221.  As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

222.   Chairman Strong conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Madison County, and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

223.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

224.   Chairman Strong enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Chairman Strong also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the

Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

225.   Moreover, in retaliation for her opposition to and complaints of sexual harassment, Chairman Strong conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Madison County and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

226.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office

and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

227.   The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working

environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

228.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted

complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

229.   Chairman Strong conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

230.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

231.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

232.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Chairman Strong conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out above. Chairman Strong subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy

Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

233.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office. Chairman Strong conspired together with Cpt./Chief Deputy Sheriff Phillips, Sheriff Dorning, the Sheriff's Office, Chief Deputy Sheriff Jernigan, Deputy Director Flory, Director Howell, Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission.

234.   Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

235.    Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

236.    Chairman Strong thus has violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

237.    Chairman Strong failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

238.    Chairman Strong knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

239.    It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning,

Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, that females working for Sheriff Dorning, Madison County, and the Commission including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Chairman Strong, Sheriff Dorning, the Sheriff's Office, Director Howell, Deputy Director Flory, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should

have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

240.  The unlawful conduct of Chairman Strong as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

241.  Chairman Strong's conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

242.  Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

243.  Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

244.  Cagle is suffering and will continue to suffer irreparable injury from Chairman Strong's unlawful conduct as set forth herein unless enjoined by this Court.

<u>**COUNT VIII**</u>
<u>**CLAIMS OF DISCRIMINATION, DISPARATE DISCIPLINARY**</u>
<u>**TREATMENT, HOSTILE WORKING ENVIRONMENT, AND**</u>
<u>**RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH**</u>

## <u>AMENDMENT AGAINST COMMISSIONER JONES IN HIS OFFICIAL CAPACITY AND IN HIS INDIVIDUAL CAPACITY</u> (ASSERTED VIA 42 U.S.C. §1983)

245.   Cagle realleges and incorporates by reference paragraphs 1-244 above with the same force and effect as if fully set out in specific detail herein below.

246.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the Madison County Employee Handbook adopted on December 15, 2016, Commissioner Jones was and is an employer of Cagle under Title VII's definition of employer. Commissioner Jones employs more than fifteen (15) employees. Commissioner Jones agreed to be bound by and to follow these policies and procedures and to have the Sheriff's Office and its employees governed by these policies and procedures.

247.   Commissioner Jones knew about and/or should have known about and/or participated in discussions about and/or made decisions about Cagle's reports and claims of sexual harassment, a sexually hostile working environment, discrimination, retaliation, and the retaliatory hostile working environment as they did when Chairman Strong told Sheriff Dorning in a letter published in the Huntsville Times:

> "…Your lack of understanding of the severity and

consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…

…It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

248.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, Commissioner Jones was an employer of Cagle under Title VII's definition of employer. Commissioner Jones employs more than fifteen (15) employees.

249.   As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Commissioner Jones, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of

Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

250.   Commissioner Jones conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Chairman Strong, Madison County, and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

251.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

252.   Commissioner Jones enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Commissioner

Jones also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

253.   Moreover, in retaliation for her opposition to and complaints of sexual harassment, Commissioner Jones conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Chairman Strong, Madison County and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken

against Cagle in retaliation, and took other adverse employment actions against her.

254.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

255.   The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, Commissioner Jones, the Sheriff's Office, Chairman Strong, Madison County, and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory

adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

256.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, and Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Commissioner Jones', Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County,

and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

257.   Commissioner Jones conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff

Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

258.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

259.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

260.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Commissioner Jones conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out

above. Commissioner Jones subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

261.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office. Commissioner Jones conspired together with Cpt./Chief Deputy Sheriff Phillips, Sheriff Dorning, the Sheriff's Office, Chief Deputy Sheriff Jernigan, Deputy Director Flory, Director Howell, Chairman Strong, Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission.

262.   Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then

Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Chairman Strong, Commissioner Jones, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

263.   Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

264.   Commissioner Jones thus has violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

265.   Commissioner Jones failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

266.   Commissioner Jones knew of Cagle's reports, complaints, and

opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

267.   It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, that females working for Sheriff Dorning, Madison County, and the Commission including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Commissioner Jones, Sheriff Dorning, the Sheriff's Office, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies.

All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

268.   The unlawful conduct of Commissioner Jones as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

269.   Commissioner Jones's conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

270.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

271.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing

adequate relief.

272.   Cagle is suffering and will continue to suffer irreparable injury from Commissioner Jones's unlawful conduct as set forth herein unless enjoined by this Court.

**COUNT IX**
**CLAIMS OF DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, HOSTILE WORKING ENVIRONMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENT AGAINST COMMISSIONER HARAWAY IN HIS OFFICIAL CAPACITY AND IN HIS INDIVIDUAL CAPACITY**
**(ASSERTED VIA 42 U.S.C. §1983)**

273.   Cagle realleges and incorporates by reference paragraphs 1-272 above with the same force and effect as if fully set out in specific detail herein below.

274.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the Madison County Employee Handbook adopted on December 15, 2016, Commissioner Haraway was and is an employer of Cagle under Title VII's definition of employer. Commissioner Haraway employs more than fifteen (15) employees. Commissioner Haraway agreed to be bound by and to follow these policies and procedures and to have the Sheriff's Office and its employees governed by these policies and procedures.

275.   Commissioner Haraway knew about and/or should have known about

and/or participated in discussions about and/or made decisions about Cagle's reports and claims of sexual harassment, a sexually hostile working environment, discrimination, retaliation, and the retaliatory hostile working environment as they did when Chairman Strong told Sheriff Dorning in a letter published in the Huntsville Times:

> "…Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…
>
> …It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

276.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, Commissioner Haraway was an employer of Cagle under Title VII's definition of employer. Commissioner Haraway employs more than fifteen (15) employees.

277.   As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt.

Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, Commissioner Haraway, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

278. Commissioner Haraway conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Chairman Strong, Madison County, and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

279. As stated above, Chief Deputy Sheriff Jernigan himself engaged in

unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

280.   Commissioner Haraway enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Commissioner Haraway also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

281.   Moreover, in retaliation for her opposition to and complaints of sexual harassment, Commissioner Haraway conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director

Flory, the Sheriff's Office, Chairman Strong, Madison County and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

282.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

283.   The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, Commissioner Haraway, the Sheriff's Office, Chairman Strong, Madison County, and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been

and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

284.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, Commissioner Vandiver's, the Sheriff's Office's, Commissioner Haraway's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was

suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

285.   Commissioner Haraway conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

286.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

287.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

288.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Commissioner Haraway conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out above. Commissioner Haraway subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

289.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office. Commissioner Haraway conspired together with Cpt./Chief Deputy Sheriff

Phillips, Sheriff Dorning, the Sheriff's Office, Chief Deputy Sheriff Jernigan, Deputy Director Flory, Director Howell, Chairman Strong, Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission.

290.   Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Chairman Strong, Commissioner Haraway, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

291.   Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

292.   Commissioner Haraway thus has violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42

U.S.C. §1983.

293.   Commissioner Haraway failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

294.   Commissioner Haraway knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

295.   It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, that females working for Sheriff Dorning, Madison County, and the Commission including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff

Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Commissioner Haraway, Sheriff Dorning, the Sheriff's Office, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

296.   The unlawful conduct of Commissioner Haraway as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

297.   Commissioner Haraway conduct, as described above caused and is

still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

298.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

299.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

300.   Cagle is suffering and will continue to suffer irreparable injury from Commissioner Haraway unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT X
## CLAIMS OF DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, HOSTILE WORKING ENVIRONMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENT AGAINST COMMISSIONER HILL IN HIS OFFICIAL CAPACITY AND IN HIS INDIVIDUAL CAPACITY
### (ASSERTED VIA 42 U.S.C. §1983)

301.   Cagle realleges and incorporates by reference paragraphs 1-300 above with the same force and effect as if fully set out in specific detail herein below.

302.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison

County, Alabama Personnel Board on June 11, 2015; and, the Madison County Employee Handbook adopted on December 15, 2016, Commissioner Hill was and is an employer of Cagle under Title VII's definition of employer. Commissioner Hill employs more than fifteen (15) employees. Commissioner Hill agreed to be bound by and to follow these policies and procedures and to have the Sheriff's Office and its employees governed by these policies and procedures.

303. Commissioner Hill knew about and/or should have known about and/or participated in discussions about and/or made decisions about Cagle's reports and claims of sexual harassment, a sexually hostile working environment, discrimination, retaliation, and the retaliatory hostile working environment as they did when Chairman Strong told Sheriff Dorning in a letter published in the Huntsville Times:

> "…Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…
>
> …It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

304. By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form

which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, Commissioner Hill was an employer of Cagle under Title VII's definition of employer. Commissioner Haraway employs more than fifteen (15) employees.

305.   As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Commissioner Hill, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

306.   Commissioner Hill conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Madison County, and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's

unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

307.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

308.   Commissioner Hill enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Commissioner Haraway also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory

adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

309.   Moreover, in retaliation for her opposition to and complaints of sexual harassment, Commissioner Hill conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Chairman Strong, Madison County and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

310.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

311.   The commotion from Cagle's reporting Sgt. Patterson resulted in

Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, Commissioner Hill, the Sheriff's Office, Chairman Strong, Commissioner Hill, Madison County, and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning

and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together..

312.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Commissioner Hill's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to

work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

313.   Commissioner Hill conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

314.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

315.   Cagle made reasonable and good faith complaints and reports of

Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

316.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Commissioner Hill conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out above. Commissioner Hill subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse

employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

317.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office. Commissioner Hill conspired together with Cpt./Chief Deputy Sheriff Phillips, Sheriff Dorning, the Sheriff's Office, Chief Deputy Sheriff Jernigan, Deputy Director Flory, Director Howell, Chairman Strong, Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

318.   Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Chairman Strong, Commissioner Hill, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt.

Rutherford had received.

319.   Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

320.   Commissioner Hill thus has violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

321.   Commissioner Hill failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

322.   Commissioner Hill knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

323.   It was the custom, policy, and practice of the Sheriff's Office and

Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, that females working for Sheriff Dorning, Madison County, and the Commission including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Commissioner Hill, Sheriff Dorning, the Sheriff's Office, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle

and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

324.   The unlawful conduct of Commissioner Hill as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

325.   Commissioner Hill conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

326.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

327.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

328.   Cagle is suffering and will continue to suffer irreparable injury from Commissioner Hill unlawful conduct as set forth herein unless enjoined by this Court.

## **COUNT XI**

**CLAIMS OF DISCRIMINATION, DISPARATE DISCIPLINARY
TREATMENT, HOSTILE WORKING ENVIRONMENT, AND
RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH
AMENDMENT AGAINST COMMISSIONER VANDIVER IN HIS
OFFICIAL CAPACITY AND IN HIS INDIVIDUAL CAPACITY
(ASSERTED VIA 42 U.S.C. §1983)**

329.   Cagle realleges and incorporates by reference paragraphs 1-328 above

with the same force and effect as if fully set out in specific detail herein below.

330.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama

Legislature; The Madison County Employee Handbook, adopted by the Madison

County, Alabama Personnel Board on June 11, 2015; and, the Madison County

Employee Handbook adopted on December 15, 2016, Commissioner Vandiver was

and is an employer of Cagle under Title VII's definition of employer.

Commissioner Vandiver employs more than fifteen (15) employees. Commissioner

Vandiver agreed to be bound by and to follow these policies and procedures and to

have the Sheriff's Office and its employees governed by these policies and

procedures.

331.   Commissioner Vandiver l knew about and/or should have known

about and/or participated in discussions about and/or made decisions about Cagle's

reports and claims of sexual harassment, a sexually hostile working environment,

discrimination, retaliation, and the retaliatory hostile working environment as they

did when Chairman Strong told Sheriff Dorning in a letter published in the

Huntsville Times:

"…Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…

…It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

332.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, Commissioner Vandiver was an employer of Cagle under Title VII's definition of employer. Commissioner Vandiver employs more than fifteen (15) employees.

333.   As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Commissioner Vandiver, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis

of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

334.   Commissioner Vandiver conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Madison County, and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

335.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

336.   Commissioner Vandiver enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy

Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Commissioner Vandiver also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

337.   Moreover, in retaliation for her opposition to and complaints of sexual harassment, Commissioner Vandiver conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Chairman Strong, Madison County and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security

work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

338.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

339.   The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, the Sheriff's Office, Chairman Strong, Commissioner Vandiver, Madison County, and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation,

degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

340.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Commissioner Vandiver's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no

longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

341.   Commissioner Vandiver conspired together with Sheriff Dorning,

Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

342.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

343.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

344.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Commissioner Vandiver conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell,

Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out above. Commissioner Vandiver subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

345.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office. Commissioner Vandiver conspired together with Cpt./Chief Deputy Sheriff Phillips, Sheriff Dorning, the Sheriff's Office, Chief Deputy Sheriff Jernigan, Deputy Director Flory, Director Howell, Chairman Strong, Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission, all of whom ratified,

affirmed, and confirmed each other's behavior and conspired together.

346.    Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Chairman Strong, Commissioner Vandiver, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

347.    Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

348.    Commissioner Vandiver thus has violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

349.    Commissioner Vandiver failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her

complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

350.   Commissioner Vandiver knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

351.   It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, that females working for Sheriff Dorning, Madison County, and the Commission including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Commissioner Vandiver, Sheriff Dorning, the Sheriff's Office, Director

Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

352.   The unlawful conduct of Commissioner Vandiver as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

353.   Commissioner Vandiver conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

354.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had

through her employment.

355.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

356.   Cagle is suffering and will continue to suffer irreparable injury from Commissioner Vandiver unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT XII
## CLAIMS OF DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, HOSTILE WORKING ENVIRONMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENT AGAINST COMMISSIONER RIDDICK IN HIS OFFICIAL CAPACITY AND IN HIS INDIVIDUAL CAPACITY
### (ASSERTED VIA 42 U.S.C. §1983)

357.   Cagle realleges and incorporates by reference paragraphs 1-356 above with the same force and effect as if fully set out in specific detail herein below.

3658  By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the Madison County Employee Handbook adopted on December 15, 2016, Commissioner Riddick was and is an employer of Cagle under Title VII's definition of employer. Commissioner Riddick employs more than fifteen (15) employees. Commissioner

Riddick agreed to be bound by and to follow these policies and procedures and to have the Sheriff's Office and its employees governed by these policies and procedures.

359.   Commissioner Riddick knew about and/or should have known about and/or participated in discussions about and/or made decisions about Cagle's reports and claims of sexual harassment, a sexually hostile working environment, discrimination, retaliation, and the retaliatory hostile working environment as they did when Chairman Strong told Sheriff Dorning in a letter published in the Huntsville Times:

> "…Your lack of understanding of the severity and consequences of what has occurred under your leadership throughout your department - with practically no discipline and your continued arrogance to say 'we have done nothing wrong' as the lawsuits pile up…is baffling to say the least…
>
> …It appears more evident this is a pattern of repeated conduct rather than an honest mistake…"

360.   By virtue of Act No. 941 of the  1973 Regular Session of the Alabama Legislature; The Madison County Employee Handbook, adopted by the Madison County, Alabama Personnel Board on June 11, 2015; and, the July 18, 2016 form which Cagle was required to sign, the Acknowledgment of Process for Reporting Harassment, Commissioner Riddick was an employer of Cagle under Title VII's definition of employer. Commissioner Riddick employs more than

fifteen (15) employees.

361.   As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Commissioner Riddick, the Sheriff's Office, Madison County, and the Commission jointly, **all of whom ratified, affirmed, and confirmed each other's behavior and conspired together,** thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

362.   Commissioner Riddick conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Madison County, and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt.

Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

363.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

364.   Commissioner Riddick enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Commissioner Riddick also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the

time of the conduct.

365.   Moreover, in retaliation for her opposition to and complaints of sexual harassment, Commissioner Riddick conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, the Sheriff's Office, Chairman Strong, Madison County and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

366.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

367.   The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, Commissioner Riddick, the Sheriff's Office, Chairman Strong, Madison County, and the Commission and

putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and

stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

368.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Commissioner Riddick's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified,

affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

369.   Commissioner Riddick conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

370.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

371.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these

violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

372.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Commissioner Riddick conspired together with Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Deputy Director Flory, Director Howell, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as set out above. Commissioner Vandiver subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's

behavior and conspired together.

373.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt. Phillips' office. Commissioner Riddick conspired together with Cpt./Chief Deputy Sheriff Phillips, Sheriff Dorning, the Sheriff's Office, Chief Deputy Sheriff Jernigan, Deputy Director Flory, Director Howell, Chairman Strong, Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

374.   Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Chairman Strong, Commissioner Riddick, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

375.   Additionally, in retaliation for her participation in filing a Charge Of

Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

376.   Commissioner Riddick thus has violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

377.   Commissioner Riddick failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

378.   Commissioner Riddick knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Chief Deputy Sheriff Jernigan about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

379.   It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all

of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, that females working for Sheriff Dorning, Madison County, and the Commission including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Commissioner Riddick, Sheriff Dorning, the Sheriff's Office, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by

the official/person at the time of the conduct.

380.   The unlawful conduct of Commissioner Vandiver as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

381.   Commissioner Riddick conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

382.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

383.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

384.   Cagle is suffering and will continue to suffer irreparable injury from Commissioner Riddick unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT XIII
## CLAIMS OF SEXUAL HARASSMENT, HOSTILE WORKING ENVIRONMENT, DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND TH FOURTEENTH AMENDMENT AGAINST THE SHERIFF'S OFFICE
### (ASSERTED VIA 42 U.S.C. §1983)

385.   Cagle realleges and incorporates by reference paragraphs 1 through 1-384 above with the same force and effect as if fully set out in specific detail herein below.

386.   As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Madison County Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

387.   The Sheriff's Office and Sheriff Dorning conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating

and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

388.   The Sheriff's Office and Sheriff Dorning enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming Sgt. Rutherford's unlawful behavior by not stopping and/or preventing Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Sheriff Dorning just watched and did nothing to stop Sgt. Patterson's unlawful behavior and behavior which violated his, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

389.   Moreover, in retaliation for her opposition to and complaints of sexual harassment, the Sheriff's Office and Sheriff Dorning conspired together with Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and took Cagle's cell phone  from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

390.   The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampant, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission. Cagle submitted her August 11, 2017 letter of resignation rather than present for

the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

391.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Madison County's, and the Commission's failure to promptly and/or adequately

investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

392.   The Sheriff's Office and Sheriff Dorning conspired together with Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director

Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

393.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

394.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

395.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, the Sheriff's Office and Sheriff Dorning conspired together with Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to ongoing acts of retaliation, as

set out above. The Sheriff's Office and Sheriff Dorning subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employed by Sheriff Dorning, Madison County, and the Commission.

396.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt./Chief Deputy Sheriff Phillips' office. The Sheriff's Office and Sheriff Dorning conspired together with Chief Deputy Sheriff Jernigan, Cpt. Phillips, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission.

397.   Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Chief Deputy Sheriff Phillips

talked to then Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. The Sheriff's Office, Sheriff Dorning, Chief Deputy Sheriff Jernigan, and Cpt. Phillips conspired together with Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

398.   Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

399.   The Sheriff's Office and Sheriff Dorning thus have violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

400.   The Sheriff's Office and Sheriff Dorning failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

401. The Sheriff's Office and Sheriff Dorning knew of Cagle's reports, complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Sheriff Dorning about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

402. It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Sheriff Dorning, the Sheriff's office, Director Howell, Deputy Director Flory, Madison County, and the Commission stood by, ratified, and confirmed this unlawful custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's

Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

403.   The unlawful conduct of the Sheriff's Office and Sheriff Dorning, as described above, was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

404.   The Sheriff's Office's and Sheriff Dorning's conduct, as described Above, caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

405.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

406.   Cagle has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing

adequate relief.

407.   Cagle is suffering and will continue to suffer irreparable injury from the Sheriff's Office's, and Sheriff Dorning's, unlawful conduct as set forth herein unless enjoined by this Court.

**COUNT XIV**
**CLAIMS OF SEXUAL HARASSMENT, HOSTILE WORKING ENVIRONMENT DISCRIMINATION, DISPARATE DISCIPLINARY TREATMENT, AND RETALIATION IN VIOLATION OF TITLE VII AND THE FOURTEENTH AMENDMENT AGAINST CHIEF DEPUTY SHERIFF KERRY PHILLIPS IN HIS OFFICIAL CAPACITY AS CHIEF DEPUTY SHERIFF OF MADISON COUNTY, ALABAMA AND IN HIS INDIVIDUAL CAPACITY**
**(ASSERTED VIA 42 U.S.C. §1983)**

408.   Cagle realleges and incorporates by reference paragraphs 1 through 407 above with the same force and effect as if fully set out in specific detail herein below.

409.   As discussed above, Cagle was willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed and subjected to a sexually hostile work environment by Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County, and the Commission jointly, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, thereby being discriminated against on the basis of sex with

respect to the terms, conditions, and privileges of her employment in violation of Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

410.   Cpt./Chief Deputy Sheriff Phillips conspired together with Tim Clark, Deputy Jones, Sgt. Patterson, Sgt. Rutherford, Sheriff Dorning, Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission by ratifying, confirming, and affirming Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior by not investigating and/or by not adequately investigating their unlawful behavior and by subjecting Cagle to disparate disciplinary treatment based on her sex. Sheriff Dorning even watched Sgt. Patterson's massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head. The sexual harassment, the massaging Cagle's shoulders, touching Cagle's neck, and touching Cagle's head was frequent, if not daily.

411.   As stated above, Chief Deputy Sheriff Jernigan himself engaged in unlawful sexual comments and innuendos when talking about Cagle and Deputy Holt.

412.   Cpt./Chief Deputy Sheriff Phillips, enabled Tim Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's behavior by ratifying, confirming, and affirming their unlawful behavior by not stopping and/or preventing Tim

Clark's, Deputy Jones', Sgt. Patterson's, and Sgt. Rutherford's unlawful behavior. Cpt./Chief Deputy Sheriff Phillips also enabled Sheriff Dorning's watching Sgt. Patterson's unlawful behavior and behavior which violated Sheriff Dorning's, Madison County's, and the Commissions anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

413.   Moreover, in retaliation for her opposition to and complaints of sexual harassment, Cpt./Chief Deputy Sheriff Phillips conspired together with Sheriff Dorning, Chief Deputy Sheriff Dorning, the Sheriff's Office, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and took Cagle's cell phone from her when her mother was dying, started making her pay the cell phone bill when her cell phone was returned to her which was a severe financial adverse employment action taken against Cagle in retaliation, and made her continue to handle the part-time escort work and security work for which

she was not paid which was a severe financial adverse employment action taken against Cagle in retaliation, and took other adverse employment actions against her.

414.   Chief Deputy Sheriff Jernigan, even after leaving the Sheriff's Office and the employment of Sheriff Dorning, Madison County, and the Commission, conducted training for employees of the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission.

415. The commotion from Cagle's reporting Sgt. Patterson resulted in Sheriff Dorning and Cpt./Chief Deputy Sheriff Phillips conspiring together with Director Howell, Deputy Director Flory, Chairman Strong, the Sheriff's Office, Madison County and the Commission and putting Cagle on administrative leave from August 2, 2017 through August 11, 2017 with pay and an additional five days of administrative leave without pay. The working environment was so hostile. the sexual harassment so rampart, and the retaliatory adverse employment actions against her had been and were so great that Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted

complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together, because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

416.   As a direct result of said sexual harassment, sexually hostile working environment, retaliation, and the Sheriff's Office's, Sheriff Dorning's, Chief Deputy Sheriff Jernigan, Cpt./Chief Deputy Sheriff Phillips, Director Howell's, Deputy Director Flory's, Chairman Strong's, the Sheriff's Office's, Madison County's, and the Commission's failure to promptly and/or adequately investigate and/or remedy said acts, Cagle could no longer tolerate working for the Sheriff's

Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together. Cagle submitted her August 11, 2017 letter of resignation rather than present for the August 11, 2017 meeting with Sheriff Dorning knowing that she would once again be subjected to humiliation, degradation, unwarranted complaints, reprisals, and retaliatory adverse employment actions. For some time, Cagle could not sleep at night, was suffering from anxiety attacks, suffering from mental and emotional stress, feared going to work, and lost her appetite and was losing weight. There was no way for Cagle to get away from the hostile working environment unless she left the employment of Sheriff Dorning, Madison County, and the Commission because even after Chief Deputy Sheriff Jernigan left, Sheriff Dorning and Chief Deputy Sheriff Phillips communicated with Cagle even after hours about the part-time escort and security work for which Cagle was not being paid. Cagle had to seek professional medical and counseling help because of the anxiety and stress she was suffering at work. In order to save her health and sanity, Cagle could no longer tolerate working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

417. Cpt./Chief Deputy Sheriff Phillips conspired together with Sheriff Dorning, Cpt. Phillips, the Sheriff's Office, Director Howell, Deputy Director

Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to disparate treatment due to her sex.

418.   Cagle made reasonable and good faith complaints and reports of her being sexually harassed and working in a sexually hostile working environment in the Sheriff's Office to multiple levels of supervision and management.

419.   Cagle made reasonable and good faith complaints and reports of Garcia's complaints and reports of sexual harassment, working in a sexually hostile working environment, racial harassment, working in a racially hostile working environment, and retaliation for reporting and complaining about these violations of the law and of the policies of Sheriff Dorning, Madison County, and the Commission to multiple levels of supervision and management. Cagle made her opposition to how Garcia was being retaliated against as a result of her complaints and reports known to multiple levels of supervision and management. Cagle even gave a Declaration in support of Garcia.

420.   Thereafter, in response to her complaints and reports of sexual harassment and working in a sexually hostile working environment and in response to her opposition of how Garcia was being retaliated against, Cpt./Chief Deputy Sheriff Phillips conspired together with Chief Deputy Sheriff Jernigan, the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Commission and subjected Cagle to

ongoing acts of retaliation, as set out above. Cpt./Chief Deputy Sheriff Phillips subjected Cagle to an unlawful retaliatory hostile environment. The retaliatory substantial financial adverse employment action of making Cagle pay the cell phone bill for the part-time escort and security work of the Sheriff's Office continued even after Cpt. Phillips became the Chief Deputy Sheriff. Cagle complained to Chief Deputy Sheriff Phillips, but Chief Deputy Sheriff Phillips refused to lift the said retaliatory substantial financial adverse employment action against Cagle and it continued to the time Cagle was no longer employer by Sheriff Dorning, Madison County, and the Commission.

421.   Cpt./Chief Deputy Sheriff Phillips knew of, or should have known of, Deputy Jones' and Sgt. Patterson's sexual harassment of Cagle. It transpired in the office where Cagle worked which was essentially in Cpt./Chief Deputy Sheriff Phillips' office. Cpt./Chief Deputy Sheriff Phillips conspired together with Chief Deputy Sheriff Jernigan, Sheriff Dorning, the Sheriff's Office, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, and the Madison County Commission to conceal and cover up Deputy Jones' and Sgt. Patterson's unlawful behavior and conduct which also violated the policies and procedures of Sheriff Dorning, Madison County, and the Commission.

422. Then Cpt. Phillips knew about Sgt. Rutherford's being sent to the SMILE training conference in Phoenix, Arizona. Then Cpt. Phillips talked to then

Chief Deputy Sheriff Jernigan about how Sgt. Rutherford had received training at the SMILE conference. Sheriff Dorning, Chief Deputy Sheriff Jernigan, and then Cpt. Phillips conspired together with, Director Howell, Deputy Director Flory, Chairman Strong, Madison County, Jeff Rich, and the Commission and concealed and covered up the training Sgt. Rutherford had received.

423.    Additionally, in retaliation for her participation in filing a Charge Of Discrimination with the EEOC, etc., Cagle has been denied rehire and/or hiring opportunities with the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's behavior and conspired together.

424.    Cpt./Chief Deputy Sheriff Phillips thus violated the proscriptions against retaliation, sexual harassment, and discrimination found in Title VII and the equal protection of the laws, the Fourteenth Amendment, through the vehicle of 42 U.S.C. §1983.

425.    Cpt./Chief Deputy Sheriff Phillips failed to take effective remedial action to end the retaliatory hostile environment, and instead the retaliatory hostile environment continued and escalated with Cagle's being retaliated against in response to her complaints of retaliation. These ongoing acts of retaliation which caused Cagle economic damages are set forth above.

426.    Cpt./Chief Deputy Sheriff Phillips, knew of Cagle's reports,

complaints, and opposition because Director Howell and Deputy Director Flory told Cagle they would have to tell Cpt./Chief Deputy Sheriff Phillips about her coming to them and her reports, complaints, and opposition to the violations of the law and of the anti-harassment policies of Sheriff Dorning, Madison County, and the Commission.

427.   It was the custom, policy, and practice of the Sheriff's Office and Sheriff Dorning that females working for the Sheriff's Office, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission, all of whom ratified, affirmed, and confirmed each other's policies, practices, and behavior and conspired together, that females working for the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, all of whom conspired together, including, but not limited to Cagle, were subjected to a male dominant work environment at the Sheriff's Office and the accompanying sexual harassment. Sheriff Dorning essentially told Cagle that female employees should expect a sexually harassing work environment. Sheriff Dorning told Cagle, because she was going to be working in the main office, front office, that she would be experiencing things from the male employees who would be coming in and out of the office where she worked and that men do what men do. Cpt./Chief Deputy Sheriff Phillips, Sheriff Dorning, Director Howell, Deputy Director Flory, Madison County, and the Commission stood by, ratified, and confirmed this unlawful

custom, practice, and policy and this custom, practice, and policy which violated their own anti-harassment policies. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

428.   The unlawful conduct of the Sheriff's Office, and Chief Deputy Sheriff Jernigan, as described above was done with malice and/or reckless disregard of and/or deliberate indifference to Cagle's federally protected rights.

429.   The Sheriff's Office's, and Chief Deputy Sheriff Jernigan's conduct, as described above caused and is still causing Cagle emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

430.   Cagle has been further damaged in that she has lost income, both past and future; her health insurance; retirement benefits; and, the other benefits she had through her employment.

431.   Cagle has no plain, adequate, or complete remedy at law to redress the

wrongs alleged herein and this suit for back-pay, front pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

432.   Cagle is suffering and will continue to suffer irreparable injury from the Sheriff's Office's, and Chief Deputy Sheriff Jernigan's, unlawful conduct as set forth herein unless enjoined by this Court.

## STATE LAW PENDENT CLAIMS

### COUNT XV
### CLAIM OF ASSAULT AGAINST DEPUTY MIKE JONES IN HIS INDIVIDUAL CAPACITY
### (ASSERTED VIA 42 U.S.C. §1983)

433. Cagle hereby adopts and incorporates herein by reference paragraphs 43(a)-43(J) above as if they were fully set out herein.

434.   Cagle says that Deputy Jones would frequently, if not almost daily, come to Cagle's desk and in a rude and offensive manner massage her shoulders, touch and massage her neck, and touch and massage her head. This was disgusting to Cagle, unwanted by Cagle, unsolicited by Cagle, humiliating to Cagle, and demeaning to Cagle. Sometimes Deputy Jones massaging would cause Cagle physical discomfort and bruising. This unlawful and unwelcomed touching on the part of Deputy Jones continued up to the time Cagle was no longer employed by Sheriff Dorning, the Sheriff's Office, Madison County, and the Commission. This is a claim for assault.

435. Deputy Jones threatened to touch Cagle and did touch Cagle;

436. Deputy Jones made the threat in a rude manner;

437. Deputy Jones had the apparent ability to carry out the threat; and,

438. Under the circumstances, Cagle had a well-founded fear that Deputy Jones would immediately carry out the threat.

439. Deputy Jones willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed Cagle. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

**COUNT XVI**
**CLAIM OF ASSAULT AND BATTERY/BATTERY**
**AGAINST DEPUTY MIKE JONES IN HIS INDIVIDUAL CAPACITY**
**(ASSERTED VIA 42 U.S.C. §1983)**

440. Cagle hereby adopts and incorporates herein by reference paragraphs 43(a)-43(J) above as if they were fully set out herein.

441. Cagle says that Deputy Jones would frequently, if not almost daily, come to Cagle's desk and in a rude offensive manner massage her shoulders, touch and massage her neck, and touch and massage her head. This was disgusting to Cagle, unwanted by Cagle, unsolicited by Cagle, humiliating to Cagle, and demeaning to Cagle. Sometimes Deputy Jones massaging would cause Cagle physical discomfort and bruising. This unlawful and unwelcomed touching on the part of Deputy Jones continued up to the time Cagle was no longer employed by Sheriff Dorning, the Sheriff's Office, Madison County, and the Commission. This is a claim for assault and battery/battery.

442. Deputy Jones intended to frequently come to Cagle's desk and in a rude and offensive manner massage her shoulders, touch and massage her neck, and touch and massage her head. This was disgusting to Cagle, unwanted by Cagle, unsolicited by Cagle, humiliating to Cagle, and demeaning to Cagle. Sometimes Deputy Jones massaging would cause Cagle physical discomfort and bruising. This unlawful and unwelcomed touching on the part of Deputy Jones continued up to the time Cagle was no longer employed by Sheriff Dorning, the Sheriff's Office, Madison County, and the Commission.

443. Deputy Jones did this in a rude and offensive manner.

444. Deputy Jones willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed Cagle. All of which

violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

**COUNT XVII**
**CLAIM OF ASSAULT AGAINST DEPUTY BRENT PATTERSON IN HIS**
**INDIVIDUAL CAPACITY**
**(ASSERTED VIA 42 U.S.C. §1983)**

445. Cagle hereby adopts and incorporates herein by reference paragraphs 44(A)-44(E) above as if they were fully set out herein.

446.   Cagle says that Sgt. Patterson would frequently, if not almost daily, come to Cagle's desk and in a rude and offensive way massage her shoulders, touch and massage her neck, and touch and massage her head. This was offensive to Cagle, disgusting to Cagle, unwanted by Cagle, unsolicited by Cagle, humiliating to Cagle, and demeaning to Cagle. This unlawful and unwelcomed behavior on the part of Sgt. Patterson continued up to the time Cagle was no longer employed by Sheriff Dorning, the Sheriff's Office, Madison County, and the Commission. This is a claim for assault.

447. Deputy Patterson threatened to touch Cagle and did touch Cagle;

448. Deputy Patterson made the threat in a rude manner;

449. Deputy Patterson had the apparent ability to carry out the threat; and,

450. Under the circumstances, Cagle had a well-founded fear that Deputy Jones would immediately carry out the threat.

451. Deputy Patterson willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed Cagle. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

## COUNT XVIII
## CLAIM OF ASSAULT AND BATTERY/BATTERY
## AGAINST DEPUTY BRENT PATTERSON IN HIS INDIVIDUAL
## CAPACITY
## (ASSERTED VIA 42 U.S.C. §1983)

452. Cagle hereby adopts and incorporates herein by reference paragraphs

44(A)-44(E) above as if they were fully set out herein.

453. Cagle says that Sgt. Patterson would frequently, if not almost daily, come to Cagle's desk and in a rude and offensive way massage her shoulders, touch and massage her neck, and touch and massage her head. This was offensive to Cagle, disgusting to Cagle, unwanted by Cagle, unsolicited by Cagle, humiliating to Cagle, and demeaning to Cagle. This unlawful and unwelcomed behavior on the part of Sgt. Patterson continued up to the time Cagle was no longer employed by Sheriff Dorning, the Sheriff's Office, Madison County, and the Commission. This is a claim for assault and battery/battery.

454. Deputy Patterson intended to intended to frequently come to Cagle's desk and in a rude and offensive way massage her shoulders, touch and massage her neck, and touch and massage her head. This was offensive to Cagle, disgusting to Cagle, unwanted by Cagle, unsolicited by Cagle, humiliating to Cagle, and demeaning to Cagle. This unlawful and unwelcomed behavior on the part of Sgt. Patterson continued up to the time Cagle was no longer employed by Sheriff Dorning, the Sheriff's Office, Madison County, and the Commission.

455. Deputy Jones did this in a rude and offensive manner.

456. Deputy Patterson willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed Cagle. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and

protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

## COUNT XIX
## CLAIM OF WRONGFUL INTRUSION UPON SOLITUDE OR SECLUSION AGAINST SGT. STACY RUTHERFORD IN HIS INDIVIDUAL CAPACITY
## (ASSERTED VIA 42 U.S.C. §1983)

457. Cagle hereby adopts and incorporates herein by reference paragraphs 49(A)-49(H) above as if they were fully set out herein.

458. In early 2015, Chief Deputy Sheriff Jernigan circulated the following notice to the Sheriff's Office employees:

> "**Social Media Collateral Duty**
>
> The Madison County Sheriff's Office will be looking to secure an Enforcement Division body to establish a Social Media Strategy to improve Law Enforcement and engage the citizens in our communities.
>
> There is a conference in Phoenix, Arizona scheduled for April 28-30, 2014 *(sic)* that the selected Deputy or Investigator will attend. The conference is named the **"Social Media the Internet and Law Enforcement (SMILE)"**. Additional information can be obtained at www.smileconference.com.

The selected person will be someone who is capable of navigating Facebook, Twitter, and to contribute to our new Website that will be operable this month to promote a positive flow of community information for the Sheriff's Office.

Also the selected person will be using Social Media to address crime issues as well as actionable intelligence relative to public safety issues in Madison County. Additional information to pass will be media events, press releases, photos of MCSO employees interacting with the public, wanted persons, lost/found/stolen property, fact checking, alert messaging (i.e., road closures, traffic accidents, etc.) The purpose is to initiate important dialogue with our customers. Look at it as a marketing strategy to inform the public and to expand our domain to encourage the public's participation in Community Policing Solving crime is the byproduct of the strategy.

Please canvas your employees to see if you have interest.

Chief
DEADLINE: Close of business 1/15/2015 to Chief's Office

Make appropriate copies for hardcopy dissemination to employees."

459. Sgt. Rutherford was selected to attend the Social Media the Internet and Law Enforcement "SMILE" training course in Phoenix, Arizona.

460. In April 2015, Sheriff Dorning, Madison County, and the Commission sent Sgt. Rutherford to Phoenix, Arizona, to attend the SMILE training program. It cost the Sheriff's Office, Madison County, and the Commission hundreds, if not thousands, of dollars to send Sgt. Rutherford to Phoenix, Arizona to attend the SMILE training conference/seminar.

A.    Sgt. Rutherford told numerous Sheriff's Office employees that

he used the skills he learned at the SMILE training program to hack into the electronic devices including, but not limited to, cell phones and computers of female employees of the Sheriff's Office.

B.     Three of those female employees were Cagle, Deputy Holt, and Deputy Sydney Wentworth.

C.     Chris Stephens was one of the people who informed Cagle of Sgt. Rutherford's hacking into her electronic devices.

D.     Sydney Wentworth was another person who reported Sgt. Rutherford's behavior to Cagle.

E.     Sgt. Rutherford's behavior was an invasion of Cagle's privacy. It was also a form of sexual harassment of Cagle as a female employee of Sheriff Dorning, Madison County, and the Commission.

461. Cagle says Sgt. Rutherford hacked into and intruded into her electronic devices including, but not limited to her computer and cell phone. Cagle says Sgt. Rutherford wrongfully intruded by hacking into her electronic devices including, but not limited to her computer and cell phone.

462. Sgt. Rutherford intentionally intruded or pried into Cagle's private Affairs, and the intrusion was wrongful.

463. Sgt. Rutherford's hacking into Cagle's electronic devices was wrongful, improper, offensive, and unreasonable.

464. The information Sgt. Rutherford got or attempted to get was private or should be entitled to be private;

465. The intrusion would outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities; and,

466. The intrusion caused Cagle harm.

467. Sheriff Dorning and Chief Deputy Sheriff Jernigan concealed and covered up the training Sgt. Rutherford received in Phoenix, Arizona.

468. Sgt. Rutherford willfully and/or maliciously and/or with reckless disregard and/or deliberate indifference sexually harassed Cagle and wrongfully intruded upon Cagle's solitude or seclusion. All of which violated Cagle's Fourteenth Amendment rights and protections and her rights and protections under Title VII and the Fourteenth Amendment through §1983 and which deprived Cagle of those rights and protections. And, all of which were clearly-established constitutional law and federally protected rights at the time the hostile retaliatory adverse employment actions were taken against Cagle and of which a reasonable person/reasonable official/person would have known, or should have known about, given the circumstances and information possessed by the official/person at the time of the conduct.

## CAGLE'S PRAYER FOR RELIEF AS TO EACH COUNT OF THIS HER COMPLAINT (COUNTS I THROUGH XIX)

**WHEREFORE**, Cagle respectfully prays that this Court assume

jurisdiction of this action and after trial:

A.     Grant Cagle a permanent injunction enjoining the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission, their agents, successors, employees, attorneys and those acting in concert with them and at their request from continuing to violate Title VII and/or the equal protection of the laws, the Fourteenth Amendment.

B.     Grant Cagle an order requiring the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission to make her whole by awarding her instatement into the position she would have occupied in the absence of retaliation, and/or sexual harassment/discrimination by the Sheriff's Office, Sheriff Dorning, Madison County, and the Commission with the same seniority, leave and other benefits (or front pay), and back pay (with interest), and by awarding Cagle compensatory damages for emotional distress, punitive damages, and/or nominal damages.

C.     By awarding Cagle compensatory damages for emotional distress, punitive damages, and/or nominal damages against all Defendants on all issues and claims which allow such damages.

D.     Where issues and damages are triable by a jury, Cagle leaves to the discretion of the jury the amount of compensatory and the amount of punitive damages to be awarded to her.

E.      Cagle further prays for such other relief and benefits as the law allows

and provides for and the cause of justice may require, including, but not limited to,

an award of costs, attorneys' fees, and expenses.


Respectfully submitted,

/s/Michael L. Weathers
        Michael L. Weathers
        Counsel for Plaintiff Erica Marie Cagle
        101 Courtview Towers
        Florence, Alabama 35630-5417
        (256) 764-1318 Telephone
        (256) 764-1319 Facsimile
        michael.l.weathers@comcast.net


**PLAINTIFF ERICA MARIE CAGLE DEMANDS TRIAL BY STRUCK
JURY ON ALL ISSUES TRIABLE TO A JURY**

/s/Michael L. Weathers
        Michael L. Weathers